[No. 16855-0-I.   Division One.   October 13, 1986.]

*In the Matter of the Marriage of* GUADALUPE CORONA ORTIZ, *Respondent,* ANGEL ORTIZ, *Appellant,* THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES *Intervenor.*

*Lee & Uhrig,* by *M. Kathryn Lee,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Wilhelm Dingler, Assistant,* for respondents.

CALLOW, J.*—This case involves an automatic escalation clause to increase child support obligations due under a decree of dissolution. The trial court upheld the escalation clause as written. We reverse and grant judgment to the appellant, Angel Ortiz, for the excess of payments made to the Department of Social and Health Services (DSHS) pursuant to automatic increases in his child support obligations. We also grant the appellant attorney's fees and costs on appeal.

Angel Ortiz and Guadalupe Corona Ortiz were married on February 21, 1971, and subsequently adopted a daughter, Patricia. Their marriage terminated on October 27, 1977, pursuant to a decree of dissolution entered in Whatcom County Superior Court. Paragraph 3 of that decree states in pertinent part:

> That the respondent be and is hereby ordered to pay by way of support money for the support and maintenance of the said minor child the sum of $150 per month, which sum shall be increased or decreased in accordance with the Cost of Living Index as published by the U.S. Department of Labor, for the Seattle area.

---

*This appeal was heard by a Supreme Court Justice and two retired Superior Court Judges sitting as Court of Appeals Judges Pro Tempore in Division One.

At the time of the decree, Whatcom County Local Rule 16 allowed cost of living provisions in dissolution decrees.

Mrs. Ortiz began receiving public assistance benefits for herself and Patricia on September 18, 1978. In order to be eligible for these benefits, she assigned to the Department of Social and Health Services all rights to child support payable under the decree of dissolution. Mr. Ortiz was not notified until August 23, 1979, that the support obligation had been assigned to DSHS. DSHS commenced garnishing Mr. Ortiz' paycheck to collect the child support payments as computed under the decree of dissolution.

On October 23, 1979, DSHS notified Mr. Ortiz that his support debt at that point was $2,146.65. Mr. Ortiz provided proof of his support payments and on September 18, 1979, a letter was sent indicating that upon proof of an additional canceled check for January of 1978, DSHS would show that his support was current "through September, 1979."

No further communication was made from DSHS to Mr. Ortiz until December 18, 1979, when DSHS notified Mr. Ortiz that his support obligation had increased to $185.15 per month, effective October 1979. The letter instructed Mr. Ortiz to immediately begin paying $185.15 per month, plus $53.70 as past due support accumulated since October 1979.

On October 3, 1980, DSHS sent Mr. Ortiz a letter notifying him of a support increase which had occurred in October 1978. The letter instructed Mr. Ortiz to:

[B]egin remitting $235.15 effective October 15, 1980, to avoid collection action. The amount of $235.15 represents current child support of $185.15 per month and $50.00 per month on arrearages. When the percentage increase is received by this office for October, 1980, you will be notified, in the meantime we will accept the aforementioned payment plan.

On October 14, 1981, DSHS advised Mr. Ortiz that his support obligation had increased to $214.59 per month, retroactive to October of 1980, and that he would be

required to pay arrearages which had accumulated prior to the notice. Notices of further increases were sent on October 30, 1981, and October 26, 1982. Mr. Ortiz did not file an objection to any of these increases. Since DSHS was garnishing Mr. Ortiz' paycheck for support, all increases occurred through an increase in the garnishment.

In January of 1984, DSHS sent Mr. Ortiz a Notice of Percentage Increase or Decrease of Child Support, to which he made a timely objection. Mr. Ortiz also objected to the final Notice of Percentage Increase filed in January of 1985, and no increase was implemented.

On February 26, 1985, Mr. Ortiz filed a petition to modify the 1977 decree of dissolution to terminate child support for Patricia Ortiz. He also petitioned the court to determine whether he had overpaid support to DSHS and, if so, the amount of the overpayment. DSHS formally intervened and responded to Mr. Ortiz' motion. Following oral argument the trial judge filed his memorandum decision finding the automatic escalation clause to be valid and denying Mr. Ortiz the requested relief, with the exception of awarding him attorney's fees. The memorandum decision was embodied in findings of fact and conclusions of law, which were entered on June 28, 1985.

The primary issue presented is the validity of the clause in the Ortiz dissolution decree which provides for automatic escalation of child support obligations according to the Cost of Living Index. Angel Ortiz argues that the clause is void under *In re Marriage of Edwards*, 99 Wn.2d 913, 665 P.2d 883 (1983), and as such does not permit the increases in child support claimed by DSHS. DSHS has conceded that the automatic escalation clause does not meet the criteria established by *Edwards*, but asserts that the clause is not void, but merely voidable. We find the clause to be void.

At the time the Ortiz decree of dissolution was entered, Washington courts had not ruled on the validity of automatic escalation clauses. A year later, *In re Marriage of Mahalingam*, 21 Wn. App. 228, 584 P.2d 971 (1978) upheld an escalation clause which based increases in child support

upon a percentage of the obligor spouse's salary increases. The court stated that no abuse of discretion would be found where the trial court,

> after considering the needs of the child, the sources of income then available or foreseeably available to the parents, concludes that an open–ended escalation clause would reasonably assure the child of his present as well as his foreseeable economic well–being.

*Mahalingam,* at 235.

In 1982, another division of the Court of Appeals struck down an automatic escalation clause which based child support increases upon the lesser of 10 percent or the percentage change in the Consumer Price Index. *In re Marriage of Peters,* 33 Wn. App. 48, 651 P.2d 262 (1982). The *Peters* court found that such a clause violates RCW 26.09-.170.

RCW 26.09.170 provides that

> the provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of a substantial change of circumstances.

*In re Marriage of Edwards, supra,* further defined the permissible bounds of child support escalation clauses. In that case, the court found that the amount of child support could be based upon a percentage of the obligor spouse's net income, so long as the trial court "properly considers the statutory criteria" and limits the support obligation to a maximum dollar amount determined in relation to the child's needs. *Edwards,* at 915. RCW 26.09.100 provides that child support may be awarded "after considering all relevant factors". This statutory language has been interpreted as requiring the trial court to consider the age of the child, plus such factors as

> the child's needs, prospects, desires, aptitudes, abilities, and disabilities, and the parents' level of education, standard of living, and current and future resources. Also to be considered is the amount and type of support (*i.e.,* the advantages, educational and

otherwise) that the child would have been afforded if his parents had stayed together.

*Edwards,* at 915 (quoting *Childers v. Childers,* 89 Wn.2d 592, 598, 575 P.2d 201 (1978)). *Edwards,* at 918–19, further holds that:

1. "[E]scalation clauses which are related to the noncustodial parent's ability to pay and the child's needs are valid";

2. "[E]scalation clauses are necessary to insure judicial flexibility in fashioning child support orders";

3. An escalation clause tying payor's ability to pay and the child's needs reflect a trial judge's "findings that a certain percentage of the noncustodial parent's income is a reasonable and necessary amount of child support. As long as the statutory criteria are considered, such awards are valid." And,

4. "In fashioning such awards, the trial judge should determine a maximum amount of child support that would be reasonable and needed in the future and set that amount as a ceiling above which the support payments cannot rise. In setting the maximum, the trial judge should consider all the relevant factors suggested in *Childers v. Childers.*"

The recent case of *In re Marriage of Oliver,* 43 Wn. App. 423, 717 P.2d 316 (1986), relying on *Edwards* and *Peters,* struck down an automatic escalation clause which based increases in child support obligations upon the Consumer Price Index.

■ The escalation clause in the present case calls for increases in child support obligations based upon changes in the overall economy as reflected in the Cost of Living Index for the Seattle area. This basis for increases does not differ substantially from those held to be void in *Peters* and *Oliver.* The increases in child support called for by the Ortiz automatic escalation clause are neither tied to changes in the obligor spouse's income or the needs of the child, nor are they limited by a maximum dollar amount as required under *Edwards.* We hold the automatic escalation

clause in the Ortiz decree of dissolution to be void. *Edwards; Oliver; Peters.*

DSHS asserts that the automatic escalation clause in the present case is not void, but merely voidable. DSHS concedes that the clause does not meet the criteria for a valid escalation clause as set forth in *Edwards,* but argues that *Edwards* is not retroactively applicable. We disagree.

■ In determining whether to apply a judicial decision retroactively, the test is:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 448, 546 P.2d 81 (1976) (citing *Chevron Oil Co. v. Huson,* 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971)).

■ We hold that *Edwards* should be applied retroactively.

■ "[V]oid judgments have long been recognized as that type of irregularity justifying a motion to vacate." *In re Marriage of Hardt,* 39 Wn. App. 493, 496, 693 P.2d 1386 (1985). "Void judgments may be vacated irrespective of the lapse of time." *Hardt* (citing *John Hancock Mut. Life Ins. Co. v. Gooley,* 196 Wash. 357, 370, 83 P.2d 221, 118 A.L.R. 1484 (1938); *accord,* Restatement (Second) of Judgments § 74, comment *a,* at 203 (1982)). We hereby vacate the provision in the Ortiz decree of dissolution which provides for automatic increases in child support based upon the Cost of

Living Index. We find that Angel Ortiz is entitled to reimbursement for all moneys paid to DSHS in excess of the $150 per month actually due for the support of Patricia Ortiz.

Mr. Ortiz has requested attorney's fees and costs expended in maintaining this appeal. RCW 26.09.140 provides in pertinent part:

> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs.

We remand the cause to the trial court for the determination of the appropriate amount of fees and expenses to be awarded counsel for Angel Ortiz for her services. RAP 18.1(e).

The judgment of the trial court is reversed. Angel Ortiz shall be reimbursed in the sum of all amounts paid to DSHS in excess of the basic award of $150 per month computed from the date of the entry of the decree to the present. Angel Ortiz is awarded his costs on appeal.

REVELLE and RILEY, JJ. Pro Tem., concur.

Reconsideration denied December 16, 1986.

Review granted by Supreme Court March 3, 1987.