[No. 53494–2.   En Banc.   August 6, 1987.]

*In the Matter of the Marriage of* GUADALUPE CORONA ORTIZ *and* ANGEL ORTIZ, *Respondents,* THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Petitioner.*

*Kenneth O. Eikenberry, Attorney General,* and *Wilhelm Dingler, Assistant,* for petitioner.

*Lee & Uhrig,* by *M. Kathryn Lee,* for respondents.

*Deborah Perluss* and *Robert A. Stalker, Jr.,* on behalf of Evergreen Legal Services, amici curiae for petitioner.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is whether a custodial parent, or that parent's assignee, must repay the noncustodial parent for all payments made by the noncustodial parent pursuant to an invalid escalation clause in a child support decree.

The marriage of Angel and Guadalupe Ortiz was legally dissolved in October 1977 in Whatcom County. The dissolution decree ordered Mr. Angel Ortiz to pay $150 per month for the support and maintenance of the couple's only child, Patricia. The decree also provided that the monthly support payments would be increased or decreased

in accordance with the Cost of Living Index published by the United States Department of Labor for the Seattle area. The decree did not, however, set a maximum amount above which the payments would not rise.

In September 1978, Guadalupe Ortiz began receiving public assistance benefits for herself and Patricia. In order to be eligible for such benefits, she assigned all rights to child support under the dissolution decree to the Department of Social and Health Services (DSHS).

In 1979, DSHS began garnishing Mr. Ortiz' wages to collect the court ordered payments. From time to time between 1979 and 1984, DSHS notified him of percentage increases in his monthly support obligation as computed by DSHS according to its view of the requirements of the decree. Mr. Ortiz filed no objection to those increases.

Then in 1983, this court rendered its decision in the case of *In re Marriage of Edwards,* 99 Wn.2d 913, 665 P.2d 883 (1983). While *Edwards* upheld automatic escalation clauses in child support decrees, it required that they relate to the noncustodial parent's ability to pay and to the needs of the child. *Edwards* also required that following a consideration of all relevant factors, a maximum support payment or "lid" be set.

In February 1985, Mr. Ortiz petitioned the Superior Court for Whatcom County alleging that the automatic escalation clause in the child support decree, pursuant to which he had been making monthly payments, was invalid under *Edwards.* The relief he sought included reimbursement of all payments made by him over and above the basic $150 per month child support ordered by the dissolution decree.

Following a hearing, the trial court provided Mr. Ortiz some relief in the way that payments under the child support decree were calculated. The trial court clearly also ruled, however, that *Edwards* was not retroactive and that the escalation clause was voidable but was not void. Based thereon, it declined to order reimbursement of all past payments made pursuant to the escalation clause.

On appeal, the Court of Appeals reversed the trial court and held that *Edwards* was retroactive and the escalation clause void. Accordingly, it concluded that Mr. Ortiz was entitled to reimbursement of all child support moneys he had paid in excess of the basic support award of $150 per month.[1]

This case involving, as it does, an issue of substantial public interest, we granted discretionary review.[2] One issue is presented.

## ISSUE

Conceding, as the parties do, that the escalation clause in the child support part of the dissolution decree does not comport with the requirements of *In re Marriage of Edwards*, 99 Wn.2d 913, 665 P.2d 883 (1983), did the trial court err in holding that: (a) the holding in *Edwards* is not retroactive; (b) the escalation clause was voidable, rather than void; and (c) the noncustodial parent is not entitled to reimbursement of the support moneys he paid pursuant to the requirements of the escalation clause?

## DECISION

CONCLUSION. We hold that the trial court did *not* err in deciding as it did and reverse the Court of Appeals decision to the contrary.[3]

For most people with children who go through a marriage dissolution, child support is often the most significant issue because the duty of child support does not terminate when the final decree of dissolution is entered.[4] When a fixed dollar amount of child support is awarded, as has traditionally been the case, the award can rapidly become obso-

---

[1]*In re Marriage of Ortiz*, 45 Wn. App. 908, 728 P.2d 1061 (1986).

[2]RAP 13.4(b)(4).

[3]*In re Marriage of Ortiz, supra.*

[4]*See* RCW 26.09.170; *Childers v. Childers*, 89 Wn.2d 592, 597–99, 575 P.2d 201 (1978). *See also* RCW 26.16.205.

lete in the face of inflation. As a result, the custodial parent must either repeatedly return to court to seek modification of the support decree, which results in additional attorneys' fees, court congestion, and emotional trauma, or face the prospect of increasingly inadequate support.[5] That, and the usually increasing financial needs of children as they grow up, were two of the strong policy reasons cited by this court when it approved the use of escalation clauses and percentage of income awards in *Edwards*.[6] As above pointed out, however, this court went on to hold that for such clauses to be valid, they must relate to the noncustodial parent's ability to pay and the needs of the child, and include a maximum or ceiling for the support payments.[7]

■■ In order to determine whether our holding in *Edwards* is retroactive or not, we analyze it in light of the following three factors designated in *Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 448, 546 P.2d 81 (1976).[8]

1. Did the *Edwards* decision establish a new principle of law? It did. The child support decree in question was entered in 1977. As late as 1980, one pre–*Edwards* law review commentator observed that "Washington case law provides little guidance for determining what is or is not a permissible escalation clause."[9] Nor did appellate court decisions before *Edwards* clearly rule on the validity of such clauses.[10] *Edwards* injected an entirely new element

---

[5]*See In re Marriage of Edwards*, 99 Wn.2d 913, 916, 665 P.2d 883 (1983).

[6]*Edwards*, at 916.

[7]*Edwards*, at 918–19.

[8]*See Lau v. Nelson*, 92 Wn.2d 823, 826–27, 601 P.2d 527 (1979); *see also In re Marriage of Brown*, 98 Wn.2d 46, 653 P.2d 602 (1982) where we applied these three factors in a similar case.

[9]Comment, *Escalation Clauses in Washington Child Support Awards*, 55 Wash. L. Rev. 405, 406 (1980).

[10]*See In re Marriage of Mahalingam*, 21 Wn. App. 228, 233–34, 584 P.2d 971 (1978); *In re Marriage of Peters*, 33 Wn. App. 48, 651 P.2d 262 (1982). (*Edwards*

into the requirements for a valid escalation clause when it mandated a lid past which escalated support payments could not rise.[11] Furthermore, the escalation clause in the support decree in this case was included pursuant to the express authorization of a local court rule.[12]

2. <u>Based upon the history of the *Edwards* rule, its purposes and effect, would retrospective application further or retard its purpose?</u> Retrospective application would retard the purposes of *Edwards*. Escalation clauses were not prohibited by *Edwards*; they were approved. *Edwards* endeavored to strike a balance among the rights of all concerned. One aim was to prevent the cost and trauma of repeated modification proceedings, as discussed above. Another aim was to impart certainty to the amount of child support, despite adjustments which might be required by the terms of an escalation clause. To apply *Edwards* retrospectively would inevitably open the door to substantial uncertainties. On the one hand, custodial parents could be faced with claims for restitution of upward adjusted support paid, and on the other hand, noncustodial parents could be faced with claims for underpayment of support if downward adjusted support had been paid. A host of collateral legal and factual issues could likewise follow. All of this would undoubtedly lead to an increase of traumatic modification proceedings, not to a lessening of such proceedings as contemplated by *Edwards*.

3. <u>Would retrospective application of the *Edwards* rule be substantially inequitable and unjust or create hardship?</u> It would. To require custodial parents to use scarce funds to reimburse the noncustodial parent would probably, in most cases, result in diverting moneys from the needs of the children and serve to exacerbate the plight of often

---

overruled *Peters* insofar as *Peters* might be considered as invalidating such clauses.)

[11]*Edwards,* at 919.

[12]Former Whatcom County Local Rule 16.

already hard–pressed custodial parents to support their children. Similar inequities to noncustodial parents could also arise if such parents were also financially hard pressed, as they also often are, and were confronted with claims for underpayment of support if amounts had been adjusted downward pursuant to a pre–*Edwards* escalation clause. Thus, the effect of retrospective application of *Edwards* would not only be inequitable and unjust, but would be harsh indeed, for the hundreds, and perhaps thousands, of parents who have pre–*Edwards* support escalation clauses in their marriage dissolution decrees. As we previously observed in a similar situation, "[t]o permit and in fact encourage the relitigation of property interests long after the issues were supposedly settled would merely serve to reopen old wounds and create new ones."[13]

For the foregoing reasons, we concluded that the holding of *Edwards* is not retroactive.

▮ We also conclude that the escalation clause in the child support portion of the dissolution decree, while invalid as not meeting the requirements later imposed by *Edwards,* was not void but was voidable only. "A judgment, decree or order entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void."[14] A void judgment is to be distinguished from one which is merely erroneous or voidable, however, as is the support decree in this case.

> Indeed, it is a general principle that where a court has jurisdiction over the person and the subject matter, no error in the exercise of such jurisdiction can make the judgment void, and that a judgment rendered by a court of competent jurisdiction is not void merely

---

[13]*Brown,* at 52, quoting with approval from *In re Marriage of Sheldon,* 124 Cal. App. 3d 371, 177 Cal. Rptr. 380, 384 (1981), *appeal dismissed,* 456 U.S. 941, 72 L. Ed. 2d 462, 102 S. Ct. 2002 (1982).

[14]*Dike v. Dike,* 75 Wn.2d 1, 7, 448 P.2d 490 (1968), quoting with approval from *Robertson v. Commonwealth,* 181 Va. 520, 536, 25 S.E.2d 352, 146 A.L.R. 966 (1943).

because there are irregularities or errors of law in connection therewith. This is true even if there is a fundamental error of law appearing upon the face of the record. Such a judgment is, under proper circumstances, voidable, but until avoided is regarded as valid."

*Dike v. Dike,* 75 Wn.2d 1, 8, 448 P.2d 490 (1968), quoting with approval from *Robertson v. Commonwealth,* 181 Va. 520, 536, 25 S.E.2d 352, 146 A.L.R. 966 (1943).

As a consequence, we hold that the decree was voidable only. Thus, Mr. Ortiz was entitled to seek modification of the support decree with respect to his future obligations thereunder.[15] Mr. Ortiz was not, however, entitled to reimbursement for the support moneys he paid in excess of the basic $150 per month child support payments ordered by the dissolution decree.

The foregoing discussion deals with all of the questions raised in the petition for review and the answer thereto; we will not consider issues past that.[16] Furthermore, we perceive no manifest error affecting a constitutional right.[17]

As to costs and attorneys' fees, Mr. Ortiz obtained some relief in the trial court and was there awarded specified costs and attorneys' fees. The Court of Appeals also awarded Mr. Ortiz costs and attorneys' fees for his appeal to that court, and remanded the cause to the trial court for the determination thereof. Petitioner did not herein seek review of the award of attorneys' fees in the Court of Appeals.[18] Mr. Ortiz did not prevail in this court, and he also did not comply with RAP 18.1, so is not entitled to attorneys' fees and costs herein.

---

[15]RCW 26.09.170; *see Schafer v. Schafer,* 95 Wn.2d 78, 80–81, 621 P.2d 721 (1980).

[16]RAP 13.7(b); *Wood v. Postelthwaite,* 82 Wn.2d 387, 388–90, 510 P.2d 1109 (1973).

[17]*See* RAP 13.7(c); RAP 2.5(a).

[18]See footnote 16.

The decision of the Court of Appeals on the merits is reversed and that of the trial court is reinstated. The case is remanded to the trial court for determination of Mr. Ortiz' costs and attorneys' fees in the Court of Appeals.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, GOODLOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.

Reconsideration denied September 15, 1987.