68 P.3d 1121 (2003)
In re the MARRIAGE of Lauri J. WILSON, Petitioner, and
Gregory L. Wilson, Respondent.
No. 20810-9-III.
Court of Appeals of Washington, Division 3, Panel Eight.
May 15, 2003.
*1123 Colleen A. Harrington, Pullman, WA, for Appellant.
Allen M. Gauper, Salina, Sanger & Gauper, Spokane, WA, for Respondent.
*1122 BROWN, C.J.
Laurie Wilson filed a marriage dissolution petition partly requesting approval of an agreed parenting plan, which apparently had been negotiated with her husband, Gregory L. Wilson. On the filing date, a court commissioner adopted and approved the agreed plan. Five months later, Ms. Wilson unsuccessfully moved to set aside the agreed plan and grant a temporary plan, alleging (1) lack of jurisdiction due to premature filing under RCW 26.09.181(7), and (2) in any event, the final parenting plan should be set aside as the product of duress and because it was not in the best interest of the children. Ms. Wilson appealed. After interpreting RCW 26.09.181 for the first time in this unique context, we affirm.

FACTS
On March 14, 2001, Ms Wilson filed a petition for dissolution of marriage. In advance of filing, the Wilsons had settled upon an agreed plan for parenting, and through their attorneys, signed an eight-page court form entitled, "Parenting Plan Final Order" (agreed plan). Clerk's Papers (CP) at 6. At the head of the order the parties indicated: "This parenting plan is the final parenting plan agreed to by the parties and signed by the Court." CP at 6. On the filing date, a court commissioner signed the order, which partly provides, "the parenting plan set forth above is adopted and approved as an order of this court." CP at 12. The parenting plan ordered a week-on and week-off split residential placement for the Wilsons' three children, Cody (d/o/b 10/11/87), Jacob (d/o/b 8/24/89), and Ryan (d/o/b 5/18/92).
At some point, Ms. Wilson became dissatisfied with the split residential schedule. On August 10, 2001, Ms. Wilson filed a motion to set aside the agreed plan and to grant a temporary parenting plan. First, she alleged lack of jurisdiction to enter the final plan because it had not been filed after the 90-day waiting period in RCW 26.09.181(7). Second, she alleged, regardless of jurisdiction, the final plan should be set aside due to duress by Mr. Wilson and because it was not in the best interest of the children.
At the hearing, Ms. Wilson's counsel made "a novel argument" under RCW 26.09.181(7) to vacate the agreed plan. Report of Proceedings (RP) at 4. Specifically, she argued there was no provision in chapter 26.09 RCW "authorizing the Court to enter a final parenting plan before it enters a decree." RP at 4. Then, Ms. Wilson's counsel suggested the court "could either vacate this plan altogether," or "look at the affidavits as a way of coming up with a temporary plan that comports with the statute," or "the Court could find that this was a temporary parenting plan that was entered and not a final plan." RP at 4.
Finally, Ms. Wilson's counsel argued "either way you look at it, Your Honor, whether this hearing today is to issue a temporary plan based on the documents before you, or it is an amendment of the quote unquote temporary plan that was entered back in March 2001, either way, I think we can go forward." RP at 8. Summarizing further, counsel indicated "what we're really doing today is amending the plan that is in place," and then she asked the court to consider *1124 whether the plan comported with the best interest of the boys. RP at 8.
In January 2002, after considering the declarations and arguments, the court entered findings, conclusions, and an order signed December 21, 2001 denying Ms. Wilson's motion. Specifically, the trial court concluded (1) no basis existed to vacate the "final permanent plan order" under CR 60(b)(4), (2) it had subject matter and personal jurisdiction, (3) the judgment was not void under CR 60(b)(5), and (4) "[u]nder [RCW] 26.09.181(7) the Court may enter a final permanent parenting plan order prior to the expiration of 90 days from filing and service." CP at 41. Ms. Wilson appealed.

ISSUES
The first issue is whether as a matter of law the trial court erred in denying Ms. Wilson's motion under CR 60(b)(5) to set aside the parties' final parenting plan agreed to by the parties and deciding it had jurisdiction to adopt and approve the agreed plan prior to the expiration of the 90-day period provided in RCW 26.09.181(1), (7). The second issue is whether the trial court erred by abusing its discretion in rejecting Ms. Wilson's motion under CR 60(b)(4) to set aside the order adopting and approving the parties' agreed final permanent parenting plan on the ground of duress and as against the best interest of the children. Lastly, we consider the issue of attorney fees.

ANALYSIS

A. CR 60(b) Motions
We review statutory interpretation questions de novo. State v. Azpitarte, 140 Wash.2d 138, 140-41, 995 P.2d 31 (2000); Rettkowski v. Dep't of Ecology, 128 Wash.2d 508, 515, 910 P.2d 462 (1996). Unambiguous statutes are not open to judicial interpretation; we must determine their meaning by referring only to the statutory language. Harmon v. Dep't of Soc. & Health Servs., 134 Wash.2d 523, 530, 951 P.2d 770 (1998); Rettkowski, 128 Wash.2d at 515, 910 P.2d 462.
A motion to vacate a final order for lack of jurisdiction as void is reviewed de novo. Brickum Inv. Co. v. Vernham Corp., 46 Wash.App. 517, 520-21, 731 P.2d 533 (1987). On the other hand, a decision whether to grant a motion to set aside a final order under CR 60(b)(4) on the grounds of duress is reviewed for an abuse of discretion. Luckett v. Boeing Co., 98 Wash.App. 307, 309-10, 989 P.2d 1144 (1999), review denied, 140 Wash.2d 1026, 10 P.3d 406 (2000). A trial court abuses its discretion if it is based upon untenable grounds or for untenable reasons. Id.
RCW 26.09.181 governs both agreed plans and proposed permanent parenting plans (proposed plans). One or both parties may serve and file proposed plans. RCW 26.09.181(1). If one party does not submit a proposed plan, the other may move for a default order. RCW 26.09.181(1)(d). Under RCW 26.09.181(7), at least 90 days must have elapsed since filing and service, but what is to be filed and served is not specified. Agreed plans are permitted under RCW 26.09.181(4): "The parents may make an agreed permanent parenting plan."
Agreed parenting plans further the objectives found in RCW 26.09.184(1). These objectives stress a child's physical care, emotional stability, and changing needs. RCW 26.09.184(1)(a)-(c). The aim is to set parental responsibilities, minimize harmful parental conflicts, and encourage agreements in parenting plans without judicial intervention. RCW 26.09.184(1)(d)-(f). All objectives serve the ultimate purpose of caring for a child's best interests. RCW 26.09.184(1)(g). Accordingly, promoting early parenting agreements and a pattern of parental cooperation concerning a child's interests advances the stated legislative objectives for permanent parenting plans.
Consistent with RCW 26.09.181(4), RCW 26.09.181(1)(c) provides: "No proposed permanent parenting plan shall be required after filing of an agreed permanent parenting plan, after entry of a final decree, or after dismissal of the cause of action." Regarding the entry of a final order, RCW 26.09.181(7) states in unnumbered paragraphs: "The final order or decree shall be entered not sooner than ninety days after filing and service. This subsection does not apply to decrees of *1125 legal separation." RCW 26.09.181(7) does not distinguish between agreed or proposed plans or modification orders. In this sense it is somewhat ambiguous. Similarly, RCW 26.09.181(7) is unclear as to what particular final order or decree it refers to, dissolution orders and decrees generally as provided in chapter 26.09 RCW or solely orders and decrees under RCW 26.09.181.
Under RCW 26.09.181 a court may act within its discretion to adopt and approve an agreed permanent parenting plan before a final decree of dissolution, as was the case here. By doing so the court does not in a strict sense enter a "final" order. Rather it approves the adoption of the parties' agreement to parent their children until entry of the final decree or dismissal according to RCW 26.09.181(1)(c). Without this construction, a temporary plan would be required, a result precluded by RCW 26.09.181(1)(c). Logically, the approved agreed permanent parenting plan governs the parties until the further order of court, much like a temporary parenting plan.
Normally, when a final decree is entered, agreed plans become final. On the other hand, if the parties dismiss the dissolution, the dissolution court loses jurisdiction over the parties and the subject matter. Equally, any existing approved agreed permanent or proposed parenting plan is thus rendered ineffective.
Here, Ms. Wilson contends the 90-day period mentioned in RCW 26.09.181(7) is provided to allow a cooling off period for reaching parenting plans and prevents their entry prior to the expiration of 90 days. While a cooling off period may, for policy reasons, be required before dissolving the marital status, no similar logic dictates a cooling off period barring parents from reaching desirable agreements in parenting plans. Accordingly, we reject this contention.
We conclude RCW 26.09.181(7) does not prevent filing an agreed permanent parenting plan or the adoption and approval of that plan by the court before the expiration of 90 days from filing and service of the petition for dissolution. However, not even an approved agreed permanent parenting plan can be finally "entered" and fully permanent in a contested dissolution until the final decree, which in turn requires 90 days to elapse after service and filing of the petition.
It follows that a court may "adopt" and "approve" a "final parenting plan agreed to by the parties and signed by the Court" in an otherwise contested dissolution in anticipation of the entry of a final order in the dissolution decree as was done here. Even so, neither the parties, nor the court can make such an agreed parenting plan truly permanent until the final order incorporating it by reference in the final dissolution decree. Accordingly, under the circumstances, the trial court did not lose jurisdiction over either the Wilsons or the agreed plan by adopting and approving it before the expiration of 90 days of filing. We reject Ms. Wilson's proposition that the mere signing of the order makes the agreed plan somehow void.
Moreover, Ms. Wilson fails to recognize the importance of her waiting five months after securing the trial court's adoption and approval of the agreed plan before challenging it. Assuming for discussion any error in adopting and approving the agreed plan in March 2001, the timing of her request five months later undermines her jurisdiction argument because it came some two months after the 90-day time limit she insists upon. At that point, the trial court properly asserted its jurisdiction and refused to vacate the previous order. The trial court, acting within its broad discretion, reasserted the earlier ruling by ordering, adjudging, and decreeing: "The permanent parenting plan entered on March 14, 2001, is the parties' final parenting plan." CP at 41. The order signed December 21, 2001 in Spokane was filed into the Whitman County records on January 4, 2002 long after the 90-day period.
Further, Ms. Wilson overlooks the binding effect of her agreement with Mr. Wilson. Once adopted, approved, and filed, the problem for Ms. Wilson became how to withdraw from an apparently binding agreement and get the court to consider a proposed temporary *1126 parenting plan in light of the language in RCW 26.09.181(1)(c). Apparently, Ms. Wilson attempted to solve this problem by filing with her motion "a Proposed Temporary Parenting Plan as an amendment to the Parenting Plan Final Order." Appellant's Brief at 2. By following the plan for five months and then essentially asking for its amendment, Ms. Wilson all but conceded the existence of the agreement and the court's continued jurisdiction over the agreed plan.
Ms. Wilson asks us to consider that a Whitman County judge has considered similar agreed plans as merely temporary in nature. Whether or not the agreed plan may be considered temporary by another judge under similar circumstances, the trial court here did actually consider it again after 90 days and did reaffirm its binding nature between the parties and the court's intent to treat the agreed plan as the parties' final parenting plan.
Next, Ms. Wilson's argument that the parenting plan was void under CR 60(b)(5) because the trial court did not comply with RCW 26.09.181(7) is misplaced. Given these circumstances the court's failure to operate within a statutory framework at best rendered the order voidable, not void. See In re Marriage of Furrow, 115 Wash. App. 661, 63 P.3d 821, 826 (2003) ("modification court's failure to operate within the statutory framework of the adoption statute renders its order merely voidable."). Moreover, Ms. Wilson concedes the trial court had jurisdiction over the parties and the subject matter. Therefore, the trial court did not err when concluding the previous order was not void under CR 60(b)(5).
Additionally, Ms. Wilson contends the trial court abused its discretion in making its findings and then concluding no basis existed to vacate for duress under CR 60(b)(4). However, the trial court found both parties were educated, competent, practicing psychologists with no imbalance of power relative to their bargaining positions and were represented by competent counsel. It resolved the threat allegations bearing on the duress claim by considering independent evidence. Thus the trial court's findings are supported by substantial evidence in the declarations. Therefore, the trial court properly concluded the earlier order was not void under CR 60(b)(4) and did not abuse its broad discretion.
Lastly, while the trial court broadly concluded it "may enter a final permanent parenting plan order prior to the expiration of 90 days from filing and service," its order was limited: "The permanent parenting plan entered on March 14, 2001, is the parties' final parenting plan." CP at 41. Given circumstances, including Ms. Wilson's attempt to make an end run around RCW 26.09.181(1)(c) by filing a proposed permanent parenting plan after making and filing an agreed permanent parenting plan, the trial court acted properly when deciding Ms. Wilson needed to meet the modification standards of RCW 26.09.260 before seeking an amendment to the agreed permanent parenting plan amounting to a modification. See RCW 26.09.181(1)(b) (requiring a proposed parenting plan when seeking to modify a parenting plan). The trial court correctly reasoned an agreed permanent parenting plan may be adopted, approved, and considered final and binding as between the parents during a pending dissolution.
Generally, agreed permanent parenting plans previously adopted and approved by the court, whether denominated as final or not, are incorporated into the final dissolution decree by reference. Of course, under RCW 26.09.030 the parties in dissolution proceedings must wait 90 days before entering a final dissolution decree after filing and service of the summons and petition. The 90-day waiting period is likely recognized in RCW 26.09.181(7) by the statement: "The final order or decree shall be entered no sooner than ninety days after filing and service." The reference to a "final order" in RCW 26.09.181(7) is somewhat ambiguous because RCW 26.09.181 contains no other reference to a "final order."
While the reference in RCW 26.09.181(7) to a "final order" likely has limited application to the default provisions of RCW 26.09.181(1)(d) and is most likely needed to clarify the proposed permanent parenting *1127 plan provisions of RCW 26.09.181(1)(a) and (b), we need not decide that question. This is because the trial court considered Ms. Wilson's motion was made five months after the agreed plan was filed and then four months later ordered, adjudged and decreed: "The permanent parenting plan entered on March 14, 2001, is the parties' final parenting plan." CP at 41.
We conclude making and filing an agreed permanent parenting plan that is adopted and approved by the court as the parties' final parenting plan prior to the final decree or 90 days from filing and service of the petition creates a parenting plan binding between the parents. It follows that changes to such agreed permanent parenting plans must meet the modification standards of RCW 26.09.260 as was determined by the trial court. This interpretation gives meaning to all the subsections of RCW 26.09.181.
In sum, under these facts the trial court did not err when determining Ms. Wilson could not unilaterally withdraw from the agreed plan. Further, the trial court did not err when deciding Ms. Wilson could not file a proposed permanent parenting plan after filing an agreed permanent parenting plan without complying with the modification provisions of RCW 26.09.260. The trial court had continuing jurisdiction to reiterate its adoption and approval of the agreed plan as the final plan after 90 days had elapsed.

B. ATTORNEY FEES
Ms. Wilson requests attorney fees on appeal pursuant to RAP 18.1 and RCW 26.09.140. A court may award costs and attorney fees in a RCW 26.09.140 proceeding after considering the financial resources of both parties. The prevailing party standard does not apply in such proceedings. In re Marriage of Belsby, 51 Wash.App. 711, 719, 754 P.2d 1269 (1988). In considering the financial resources of both parties, the court balances the needs of the requesting party against the other party's ability to pay. In re Marriage of Trichak, 72 Wash.App. 21, 26, 863 P.2d 585 (1993). Having considered the record we deny the request. Each party is financially able to pay his or her attorney and neither would be under a critical hardship to do so.
Affirmed.
BROWN, C.J.
I CONCUR: SWEENEY, J.
KURTZ, J. (dissenting).
On the day that Laurie Wilson filed a petition for dissolution of marriage from Gregory Wilson, Mr. Wilson submitted to the court commissioner a document denominated "Parenting Plan Final Order," which the commissioner signed. Clerk's Papers (CP) at 6. This document stated, "[t]his parenting plan is the final parenting plan agreed to by the parties and signed by the Court." CP at 6. The document was presented by the attorney for Mr. Wilson and approved for entry by the attorney for Ms. Wilson. Simply stated, Mr. Wilson's attorney presented an agreed order to the court, which the court signed.
Five months later, during the pendency of the dissolution proceeding, Ms. Wilson filed a motion to vacate the permanent parenting plan and grant a temporary parenting plan. In an accompanying declaration, Ms. Wilson stated that she had agreed to the final parenting plan under duressthat her husband had threatened her with financial, professional, and social ruin if she did not agree to a parenting plan providing for joint residential custody. Additionally, Ms. Wilson stated her opinion that the split residential schedule was not working. She believed that when the boys were at their father's house, they were left unsupervised and the schedule was not in the best interest of the children. In response, Mr. Wilson denied his wife's allegations and stated that the final parenting plan was the product of negotiations between professional people assisted by attorneys.
Ms. Wilson argued that the final parenting plan was void because the superior court lacked jurisdiction to enter a final parenting plan before the expiration of the 90-day waiting period. She also argued that the final parenting plan should be set aside because the parenting plan was negotiated under duress and, consequently, contained provisions that were not in the best interests of the *1128 children. Finally, she asked the court to grant a temporary parenting plan.
In her supporting memorandum, she argued "[a] permanent or final parenting plan cannot be entered in a marriage dissolution action prior to the expiration of the 90-day period and prior to the entry of a decree of dissolution." CP at 18 (emphasis added). She relied upon RCW 26.09.050(1), which specifies the contents of a final decree:
In entering a decree of dissolution of marriage... the court shall ... make provision for a parenting plan for any minor child of the marriage....
She also relied upon the definition of a permanent parenting plan:
[A] plan for parenting the child, including allocation of parenting functions, which plan is incorporated in any final decree ... in an action for dissolution of marriage....
RCW 26.09.004(2). Finally, she relied upon RCW 26.09.181(7), entitled "[p]rocedure for determining permanent parenting plan," which provides:
ENTRY OF FINAL ORDER. The final order or decree shall be entered not sooner than ninety days after filing and service.
In summary, Ms. Wilson's motion challenged the authority of the court to enter a permanent parenting plan on the first day of the case and before the expiration of the statutorily-specified, 90-day waiting period.
The trial court understood Ms. Wilson's motion and, referring to the statute, stated:
What it [RCW 26.09.181(7) ] doesn't say is that the final plan shall not be entered. And maybe I am splitting hairs, counsel, and maybe I am looking at it too technically, but it seems to me if the legislature were to say to us: You cannot enter a final plan before 90 days, it would say so in that section, and it does not. The way I read that section, it would seem to me they are saying you can enter an agreed plan, but you still can't finalize the action before the 90 days is up.
Report of Proceedings (RP)at 44. Consequently, in the court's "Order Denying Motion to Vacate Permanent Parenting Plan," the court ruled "[u]nder [RCW] 26.09.181(7) the Court may enter a final permanent parenting plan order prior to the expiration of 90 days from filing and service." CP at 40-41.
Significantly, neither the parties nor the court understood the issue to be whether the parenting plan had been filed before the expiration of the 90-day period specified in RCW 26.09.181(7). The statute does not prevent the filing of a permanent parenting plan before the expiration of the 90-day period. What the statute states, in simple English, is the court shall not enter a final order or decree regarding a permanent parenting plan until the expiration of the 90-day period.
Moreover, the trial court did not "adopt" or "approve" the permanent parenting plan after the expiration of the 90-day period. Neither did the court make findings and enter an order regarding waiver. In other words, the court did not reason that even if the order approving the permanent parenting plan had been prematurely entered, the court was now "reiterating" its approval or adoption of the plan. Nor did the court state that Ms. Wilson had waived her objection to the early entry of the order approving the permanent parenting plan by her five-month delay. Rather, the court explicitly ruled that the commissioner had appropriately entered a final order on the first day of the case and that Ms. Wilson's recourse was to proceed under RCW 26.09.260, the statute regulating the modification of a permanent parenting plan after the entry of a decree.
First, I agree with the majority that the trial court did not abuse its discretion by denying Ms. Wilson's motion to vacate under CR 60(b)(4). CR 60(b)(4) authorizes the court to vacate a judgment for fraud, misrepresentation, or other misconduct of an adverse party. In order to prevail under that section of CR 60(b), Ms. Wilson needed to show by clear and convincing evidence that the order approving the final parenting plan was procured by Mr. Wilson's misconduct. Lindgren v. Lindgren, 58 Wash.App. 588, 596, 794 P.2d 526 (1990). After reviewing Ms. Wilson's declaration, the trial court articulated tenable reasons for denying Ms. Wilson's motion under CR 60(b). The trial *1129 court's decision was not an abuse of discretion.
Second, I agree with the majority that the trial court did not commit error by denying Ms. Wilson's motion to vacate under CR 60(b)(5). CR 60(b)(5) authorizes the court to vacate void judgments. In re Dependency of A.G., 93 Wash.App. 268, 276, 968 P.2d 424 (1998). "To declare an order void, a reviewing court must find the issuing tribunal lacked either personal jurisdiction over the parties or subject matter jurisdiction over the claim." Marley v. Dep't of Labor & Indus., 125 Wash.2d 533, 543-44, 886 P.2d 189 (1994). "A court or agency does not lack subject matter jurisdiction solely because it may lack authority to enter a given order." Id. at 539, 886 P.2d 189. "A lack of subject matter jurisdiction implies that an agency has no authority to decide the claim at all, let alone order a particular kind of relief." Id. Here, the superior court had personal jurisdiction over the Wilsons and subject matter jurisdiction over both the dissolution proceeding and the parenting plan. The trial court correctly decided that the order approving the permanent parenting plan was not a void order and, for that reason, denied the motion to vacate under CR 60(b)(5).
Nevertheless, I would reverse the trial court. While an order entered in violation of RCW 26.09.181(7) may not be void, the order may nevertheless be voidable. State v. Moen, 129 Wash.2d 535, 545, 919 P.2d 69 (1996); Marley, 125 Wash.2d at 541, 886 P.2d 189. A voidable order can be vacated for "[m]istake, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." CR 60(b)(1); see In re Marriage of Ortiz, 108 Wash.2d 643, 649-50, 740 P.2d 843 (1987). "Irregularities pursuant to CR 60(b)(1) occur when there is a failure to adhere to some prescribed rule or mode of proceeding, such as when a procedural matter that is necessary for the orderly conduct of trial is omitted or done at an unseasonable time or in an improper manner." Mosbrucker v. Greenfield Implement, Inc., 54 Wash.App. 647, 652, 774 P.2d 1267 (1989).
By entering an order approving the permanent parenting plan on the day that the petition for dissolution of marriage was filed, the court commissioner "fail[ed] to adhere to" the statutory scheme of chapter 26.09 RCW regarding parenting plans and ignored the express prohibition of RCW 26.09.181(7). By definition, a final parenting plan is the plan that is incorporated in the final decree. Because RCW 26.09.030 forbids the entry of a final decree until the expiration of a 90-day waiting period, RCW 26.09.181(7) provides for a similar waiting period. Although the RCW 26.09.181(7) waiting period is not jurisdictional, like RCW 26.09.030, the waiting period is part of an over-all statutory scheme to which courts must adhere. The court commissioner was not free to ignore the dictate of RCW 26.09.181(7) and the superior court certainly was not free to enter an order that directly contradicts the statute, as it did here when it held that RCW 26.09.181(7) allowed it to "enter a final permanent parenting plan order prior to the expiration of 90 days from filing and service." CP at 41.
Courts are advised not to strain to find ambiguity where the language of the statute is clear. Geschwind v. Flanagan, 121 Wash.2d 833, 841, 854 P.2d 1061 (1993). It is asserted that the words "final order or decree" make the statute unclear because a reader of the statute might be confused as to which "final order or decree" the drafters of the statute are referring. RCW 26.09.181 is entitled, "[p]rocedure for determining permanent parenting plan." The statute is divided into seven parts and, not surprisingly, the subject matter of each section is permanent parenting plans and the procedure to be followed by the court and the parties. In the context of both the statute and subsection (7), the words "final order or decree" unambiguously refer to the final order or decree adopting a permanent parenting plan.
Is RCW 26.09.181(7) ambiguous as it applies to the facts of this case? Subsection (1) of the statute details the procedure to be followed by parents submitting competing permanent parenting plans. Because the Wilsons submitted an agreed permanent parenting plan, as authorized by subsection (4) of the statute, the Wilsons were relieved of that obligation, In particular, RCW 26.09.181(1)(c), provides:

*1130 No proposed permanent parenting plan shall be required after filing of an agreed permanent parenting plan, after entry of a final decree....
It is asserted that RCW 26.09.181(1)(c) somehow precluded the Wilsons from having their permanent parenting plan approved by the court commissioner as a temporary parenting plan. The assertion is not correct. RCW 26.09.194 specifically authorizes the court to enter a temporary order approving an agreed parenting plan. After the Wilsons filed their agreed parenting plan, they could have complied with its provisions without court supervision. At that point, a court order is optional but not required. See 20 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 33.6, at 40-41 (Supp.2002). Or, the Wilsons could have requested the court to enter a temporary order approving the agreed parenting plan.
This court applies the rules of statutory construction to determine the legislative intent only if the statute is ambiguous. One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Invs., Inc., 108 Wash.App. 330, 340, 30 P.3d 504 (2001), aff'd in part, rev'd in part by 148 Wash.2d 319, 61 P.3d 1094 (2002). But if the statute is clear and unambiguous, as in the case of RCW 26.09.181(7), we need only give effect to its plain meaning.
I would, therefore, conclude that the trial court abused its discretion when it did not vacate the final order approving the parenting plan because of the irregularity in obtaining it, i.e., the failure to follow the statutory scheme of chapter 26.09 RCW. Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, 100 Wash.2d 343, 351, 670 P.2d 240 (1983). Accordingly, I respectfully dissent from the majority's opinion.