[No. 10459-1-III.   Division Three.   June 18, 1991.]

*In the Matter of the Marriage of* VIRGINIA
LEE COYLE, *Appellant, and* DARYL
V. COYLE, *Respondent.*

*Charles B. Phillips* and *Taggart, Lutcher & Phillips,* for appellant.

*Ronald K. McAdams* and *McAdams, Ponti & Junke, P.S.,* for respondent.

SHIELDS, J.—Upon reconsideration in a modification proceeding, the Superior Court found: (1) Daryl Coyle's payment of spousal maintenance to Virginia Coyle could be terminated; (2) Ms. Coyle was entitled to $21,630 for spousal maintenance arrearages, but was not entitled to interest on that sum; (3) the provision in the dissolution decree providing a car to Ms. Coyle was a modifiable award of maintenance; (4) Mr. Coyle's maintenance of two life insurance policies, of which Ms. Coyle was the beneficiary, could be terminated; and (5) Ms. Coyle was entitled to $1,000 for attorney fees. Both parties appeal; we reverse and remand.

## FACTS

The Coyles dissolved a 28–year marriage in 1974. The court divided the property, awarding Ms. Coyle the family residence, the household furnishings, her personal effects, her 150 shares of common stock in Coyle Oldsmobile Company, and all bank and savings accounts in her name. The court ordered Mr. Coyle to pay the premiums on a term life insurance policy, issued on his life, and maintain Ms. Coyle and their son as the beneficiaries.[1] Ms. Coyle was awarded the ownership of a cash value life insurance policy, also

---

[1] The son was their only child, had reached the age of majority and was self–supporting at the time of the dissolution.

issued on his life, which named Ms. Coyle as beneficiary; Mr. Coyle was ordered to pay the premiums. Ms. Coyle was awarded the use of a new Oldsmobile Delta 88 each year for 15 years; however, if Mr. Coyle sold the business before the termination of the 15 years, Ms. Coyle was to be awarded the new car she was then driving.

Mr. Coyle was awarded his 760 shares of common stock in Coyle Oldsmobile Company, an additional 50 community property shares in the company, two vacant lots, his personal effects and all bank and savings accounts in his name.

The court found Ms. Coyle was unable to seek and secure gainful employment, and ordered Mr. Coyle to pay Ms. Coyle maintenance of $350 per month, which sum was to be adjusted every 2 years to reflect the change in the consumer price index (CPI). Neither party appealed any of the court's 1974 decisions.

On May 27, 1988, Mr. Coyle petitioned for modification, requesting termination of his obligations to pay spousal maintenance, to maintain the life insurance policies and to provide a car. Ms. Coyle moved for summary judgment, which was partially granted. The court found Mr. Coyle had a continuing obligation to maintain life insurance and provide Ms. Coyle with a car; however, there was a material issue of fact concerning Mr. Coyle's ability to pay spousal maintenance. On January 23, 1989, the case proceeded to trial on that issue.

By letter opinion dated April 21, 1989, the trial court held Mr. Coyle had a continuing obligation to maintain the life insurance and provide a car for Ms. Coyle; however, if Ms. Coyle was awarded the 1983 Oldsmobile, which Mr. Coyle had leased for Ms. Coyle to drive in September 1987 when he sold the company, the court held the obligation regarding the car would be satisfied.[2] The court set Mr.

[2]At trial it was disclosed Ms. Coyle had not been given the car she had in her possession at the time of the September 1987 sale of Coyle Oldsmobile Company. That vehicle was valued at $18,000 retail. Instead, Mr. Coyle had arranged to lease from the new owner of Coyle Oldsmobile Company a used 1983 Oldsmobile for Ms. Coyle's use for 2 years until the expiration of the 15-year period. At the

Coyle's monthly obligation for spousal maintenance at $450; awarded Ms. Coyle $22,376 for spousal maintenance arrearages, but declined to award interest on that amount; and awarded Ms. Coyle $1,000 for attorney fees.

On May 30, 1989, Mr. Coyle moved for reconsideration of the April 21 letter decision, which had not been reduced to a judgment. On October 18, 1989, the court issued a second letter decision in which it determined the original provision in the decree concerning the car was an award of maintenance which could be modified. It reaffirmed its ruling the 1983 leased car Ms. Coyle was driving should be awarded to her, but found Mr. Coyle should pay $1,000 for necessary repairs. It reversed the summary judgment decision concerning life insurance, held the maintenance of the two life insurance policies was no longer necessary or appropriate, and terminated that obligation and all further spousal maintenance. The court reaffirmed its decision concerning spousal maintenance arrearages, determined the amount to be $21,630, declined to award interest on that amount, and reaffirmed its decision to award Ms. Coyle $1,000 for attorney fees.

### TERMINATION OF SPOUSAL MAINTENANCE

Ms. Coyle contends the court erred when it terminated her spousal maintenance. Although it is generally not the policy of this state to place a permanent responsibility for spousal maintenance upon a former spouse, *Cleaver v. Cleaver*, 10 Wn. App. 14, 20, 516 P.2d 508 (1973), there are circumstances which require a continuing obligation. *See* 1 Washington State Bar Ass'n, *Family Law Deskbook* § 29.4 (1989); *Untersteiner v. Untersteiner*, 32 Wn. App. 859, 863, 650 P.2d 256 (1982). Modification, including termination, of maintenance requires proof of a substantial, uncontemplated change in circumstances. *In re Marriage of Ochsner*, 47 Wn. App. 520, 524, 736 P.2d 292, *review denied*, 108 Wn.2d 1027 (1987).

time of trial in January 1989 the 1983 Oldsmobile was in need of numerous repairs, including a major overhaul of the transmission.

The phrase "change in circumstances" refers to the financial ability of the obligor spouse to pay vis–a–vis the necessities of the other spouse.

The determination whether a substantial and material change has occurred which justifies modification of maintenance or support is within the discretion of the trial court, and will not be reversed on appeal absent abuse of discretion. Abuse occurs where the court's decision is entered on grounds either manifestly unreasonable or clearly untenable.

(Citations omitted.) *Ochsner,* at 524–25.

The evidence at trial established the following: Mr. Coyle owns two homes and a 160–acre farm, debt free, in addition to various other assets.[3] He has the use of a car, free of charge, as a result of the sale of Coyle Oldsmobile Company in 1987.[4] Mr. Coyle has a monthly income of $730 from social security, receives approximately $680 per month from the sale of one lot,[5] receives rental income from both the farm and the Oregon beach home, and receives interest income from his savings account. Mr. Coyle is living with his third wife who also will be eligible for social security in a few years.[6] Ms. Coyle requires a monthly income of $746. She receives social security of $348 per month and interest

---

[3] In November 1988 he inherited the 160–acre farm worth $106,400, from which he receives net rental income of $6,000 per year; his father's home, valued at $55,000; and approximately $60,000 from the residue of his father's estate. The other assets included a 31–foot cruiser and boathouse valued at $16,000 and a 26–foot travel trailer valued at $5,000.

[4] On September 30, 1987, Mr. Coyle sold the company for $22,000. The sale included corporate stock, equipment, and inventory, including the 1987 Oldsmobile Delta 88 Ms. Coyle was then driving, but did not include the buildings or land on which the company operated.

[5] In May 1988 Mr. Coyle sold one of the former company lots for $40,000, receiving $8,000 as a down payment and the remaining $32,000 in monthly payments of approximately $680; one of the former company buildings for $200,322, netting $48,000 after payment of debt; and another former company building for $99,000, which he used to purchase a $71,500 Oregon beach home, that generates $5,000 per year rent, and to open a $19,500 savings account.

[6] He is not paying maintenance to his other former spouse.

from her bank accounts which approximate $40,000.[7] Ms. Coyle's only other asset is the family home, valued at $73,200. Expert testimony established Ms. Coyle suffers from various medical problems and is unable to be gainfully employed.

■ Thus, the financial ability of Mr. Coyle to pay, vis–a–vis the financial need of Ms. Coyle, remains the same as when the decree was first entered. As the court originally noted in its April 21 letter, if anything, Mr. Coyle's ability to pay "has probably increased". Furthermore, the fact that Mr. Coyle has remarried does not create a change substantial enough to warrant termination of the maintenance. *Verde v. Verde,* 78 Wn.2d 206, 471 P.2d 84 (1970); *Family Law Deskbook* § 29.9.

Here, the court merely determined maintenance should be terminated because Ms. Coyle had income sufficient to meet her needs. This was error under *Wagner v. Wagner,* 95 Wn.2d 94, 98, 621 P.2d 1279 (1980), which held the proper test is whether a substantial change in circumstances which was not within the contemplation of the parties has occurred. Here, the court's first letter decision found there was no substantial change of circumstances which was not contemplated by the parties. That determination was not reversed in its second letter decision. Rather, the court based its determination on its belief Ms. Coyle had sufficient income without maintenance to meet her needs. This later determination is not supported by the record and constitutes an abuse of discretion. Termination of spousal maintenance for Ms. Coyle was error.

### Arrearages of Spousal Maintenance

■ The court awarded spousal maintenance arrearages because Mr. Coyle failed to increase his support according to the dissolution decree's escalation clause. The clause was tied solely to the CPI, was not based on Mr. Coyle's ability

---

[7]The last Coyle Oldsmobile stock redemption payment of $304.28 per month was to be made in September 1989.

to pay nor Ms. Coyle's needs, and did not contain a maximum "lid". *In re Marriage of Ortiz,* 108 Wn.2d 643, 649, 740 P.2d 843 (1987) held such escalation clauses as to child support voidable, but not void; thus, the payer in that case was not entitled to reimbursement for sums paid in excess of the basic amount. *Ortiz,* at 650. Likewise, the escalation clause in the Coyle decree as to spousal maintenance is voidable; it cannot be retroactively applied to enforce payment of claimed unpaid amounts. *See In re Marriage of Oliver,* 43 Wn. App. 423, 425, 717 P.2d 316 (1986). It was error for the court to award $21,630 for arrearages of spousal maintenance.

### AUTOMOBILE OBLIGATION

■ Next, Ms. Coyle contends the court erred in characterizing Mr. Coyle's annual obligation to provide her with a new car as a modifiable maintenance award. She argues that provision was a nonmodifiable property disposition. Whether provisions in a decree are for maintenance or a method of property division depends upon the circumstances and the intent of the parties. *Thompson v. Thompson,* 82 Wn.2d 352, 356, 510 P.2d 827 (1973). Maintenance provisions can be modified on subsequent application of a party to a dissolution; property division provisions cannot. *Thompson,* at 356. Maintenance depends on the needs of one spouse and the ability of the other spouse to pay; generally terminates on the death of either spouse, or the remarriage of the receiving spouse; and is an obligation which is paid out of the earnings or estate of the party responsible for the obligation. Changed financial circumstances of either party will justify a modification. *Thompson,* at 357.

A property division, on the other hand, simply disposes of the property of the parties, both community and separate, presumably upon an equitable basis. *Thompson,* at 357; *Carstens v. Carstens,* 10 Wn. App. 964, 967, 521 P.2d 241 (1974). The award of property usually constitutes a specific item or sum and is not affected by the death or

remarriage of a party. *Carstens,* at 966–67. A property division cannot always be conveniently effected by a present allocation of property to each party; a specific item of property may be awarded to one spouse with a duty of the other to make future compensating payments. *Thompson,* at 357–58.

Here, the provision awarding Ms. Coyle a new car annually is set out in that part of the decree covering the property award. The obligation is not contingent on Ms. Coyle's need or Mr. Coyle's ability to pay nor does it terminate upon the death of Mr. Coyle. Further, this award is of a specific item: a new car to use every year for 15 years or the award of the most recent car should Ms. Coyle remarry or the business be sold prior to the end of the 15–year period. The award is tied to Mr. Coyle's continued ownership of the automobile dealership, and was part of the property division. Ms. Coyle was entitled to the 1987 Oldsmobile Delta 88 she was driving when the dealership was sold. It was error for the court to modify the car award.

### LIFE INSURANCE POLICIES

Ms. Coyle also contends it was error for the court to modify the dissolution decree with respect to the maintenance of the two life insurance policies. She argues those provisions were part of the property settlement, and thus nonmodifiable. The decree involved two policies: one was Prudential Life Insurance Company cash value life insurance policy 17914611 for $5,000; the other was General Motors group term insurance policy certificate 540–20–3738 for $75,000.

Premiums paid for cash value insurance purchase both cash value and protection from risk of death. A cash value policy is akin to a savings account: it is a permanent cumulative *asset* against which the owner may borrow, and which the owner may receive upon cancellation of the policy. *Aetna Life Ins. Co. v. Wadsworth,* 102 Wn.2d 652, 657, 689 P.2d 46 (1984). Term insurance, on the other hand, has

no cash surrender value. Premiums purchase only protection from risk of death for a fixed period of time. At the end of that period, there is *no asset* remaining. The length of time the insured has owned the policy and the number of premiums paid are irrelevant. *Aetna,* at 657.

## 1. Cash Value Policy

█ The cash value policy is an asset which may be awarded to either party upon dissolution. Reference to this policy is made in the property division section of the decree. Here, Ms. Coyle was awarded the ownership of this policy. She had the right to maintain it, but was awarded a decretal right to have Mr. Coyle pay the premiums. *See Porter v. MacLeod,* 15 Wn. App. 650, 653, 553 P.2d 117 (1976). This award created a debt obligation for Mr. Coyle. As his creditor, Ms. Coyle is entitled to enforce his obligation to maintain this policy. *Porter,* at 654. Thus, Mr. Coyle's obligation was not subject to modification. It was error for the court to terminate the obligation.

## 2. Term Policy

A term policy is an asset of limited duration. Once the period for which a premium has been paid expires, no asset remains. As a matter of law, it is not property after the period for which the premium has been paid expires. A new asset is acquired with each premium payment. After dissolution, that asset is the individual property of the person paying the premium for the next premium period.

█ Reference to this term policy is made twice in the decree: once in the property division section, and once in the section pertaining to ongoing obligations. Thus, an ambiguity exists as to whether the award of the term insurance was an award of property for the period the current premium had been paid, or an award creating a continuing obligation, akin to maintenance. When an ambiguity exists, the decree should be given a construction which makes it a rational and probable agreement. The circumstances and intent of the parties should be considered.

*Thompson,* at 356; *Carstens,* at 966–67; *Crozier v. Equitable Life Assur. Soc'y of United States,* 33 Wn. App. 828, 833, 658 P.2d 39, *review denied,* 99 Wn.2d 1014 (1983), *overruled on other grounds in Porter v. Porter,* 107 Wn.2d 43, 52–53, 726 P.2d 459, 68 A.L.R.4th 859 (1986).

Unlike the cash value policy, Ms. Coyle was not awarded the *ownership* of the term insurance policy, but was merely to be a cobeneficiary with the Coyles' son. As a beneficiary, she had no vested right in the nomination. *Aetna,* at 656. Even assuming Mr. Coyle could not change the beneficiaries of this policy under the terms of the decree, Ms. Coyle's interest in it was not indefeasibly vested. Thus, she did not have a present property interest, but rather an expectancy. *Aetna,* at 656. However, insurance provisions of this kind in decrees of dissolution are often considered related to and security for a child support obligation. *Crozier,* at 831; *see also Porter,* 107 Wn.2d at 47. Viewing the insurance as security for the maintenance obligation in this case would be consistent with the fact the original decree apparently awarded Ms. Coyle spousal maintenance for life. Thus, should Mr. Coyle die, Ms. Coyle would be provided some security in lieu of monthly maintenance.[8]

When a policy is used as security for the payment of child support, the beneficiaries have more than a "mere expectancy"—they have a vested equitable interest in that portion of the proceeds of the policy which cannot be divested. *See Aetna Life Ins. Co. v. Bunt,* 110 Wn.2d 368, 380, 754 P.2d 993 (1988); *Standard Ins. Co. v. Schwalbe,* 110 Wn.2d 520, 523, 755 P.2d 802 (1988). Further, if the provision requiring insurance was negotiated and agreed to by the parties, it is in the nature of a contract provision which may be enforced. *Porter,* 107 Wn.2d at 51–52.

This term life insurance provision must therefore be analyzed to determine whether it was meant to be security

---

[8]The measure of that security here was $37,500, being one–half of the $75,000 proceeds payable on Mr. Coyle's death.

for the maintenance obligation, created a vested equitable interest in Ms. Coyle, and is a contractual obligation which Ms. Coyle can enforce.

At trial the following evidence was introduced concerning the General Motors group term policy certificate 540–20–3738: the face amount was changed on at least two occasions in order to satisfy General Motors' requirements of Coyle Oldsmobile Company as its creditor; some of the premiums were paid by Coyle Oldsmobile Company; and sometime subsequent to the sale of Coyle Oldsmobile Company in September 1987, Mr. Coyle's certificate under the General Motors group term policy was canceled. Mr. Coyle substituted it with Jackson National Life Insurance Company Termanent II Preferred/Non Smoker policy L1136–N with a basic death benefit of $100,000, which provided both cash surrender and guaranteed cash surrender values in future policy years. On this record we are unable to determine the intent of the parties concerning Mr. Coyle's obligation to provide term life insurance coverage under the 1974 dissolution decree. On remand, the court must resolve this issue before making a determination whether the obligation to maintain this insurance can be terminated.[9]

## ATTORNEY FEES

Mr. Coyle contends the court erred in awarding attorney fees to Ms. Coyle. The applicable statute is RCW 26.09.140. The court balanced Ms. Coyle's needs against Mr. Coyle's ability to pay, and required Mr. Coyle pay only a portion of Ms. Coyle's attorney fees. However, in light of our determination of some of the issues in this case, the court will need to redetermine this amount on remand.

Finally, both parties request attorney fees on appeal. RAP 18.1(a) provides, "If applicable law grants to a party the right to recover reasonable attorney fees or expenses on

---

[9]It should be noted Mr. Coyle's present wife may also have a claim to a portion of the proceeds of this insurance policy if the premiums are being paid out of community funds. *See Aetna Life Ins. Co. v. Bunt, supra.*

review, the party must request the fees or expenses as provided in this rule . . .". Here, neither party has cited the applicable law which would grant either of them the right to recover attorney fees; both parties are denied attorney fees on appeal.

The order of the Superior Court on modification is reversed and the case remanded for further proceedings consistent with this opinion.

GREEN, C.J., and THOMPSON, J., concur.