# THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

In the Matter of the Marriage of

GABRIEL Y. LEE,

            Respondent,

v.

CAROL ANN KENNARD,

            Appellant.

No. 68266-1-I

ORDER DENYING MOTION
TO RECALL MANDATE
AND DENYING THE
MOTION TO STRIKE
RESPONDENT'S ANSWER
TO THE MOTION TO
RECALL MANDATE

The appellant, Carol Kennard, has filed a motion to recall the mandate issued by this court on October 18, 2013. Respondent, Gabriel Lee, has filed a response. Kennard filed a motion to strike Lee's response and a reply. Lee filed a response to the motion to strike, and Kennard filed a reply. Both Kennard and Lee request fees.

The motion to recall the mandate suggests that the opinion in Lee, by virtue of the phrase "unless the separation agreement is set aside," impliedly overturns In re Marriage of Hulscher, 143 Wn. App. 708, 108 P.3d 199 (2008), and it should be clarified to guide the trial court on remand. In re Marriage of Lee, 176 Wn. App. 678, 693, 310 P.3d 845 (2013). The phrase is merely a reference to the discussion in section II of the opinion, which relied on Hulscher. It was not intended to imply any disagreement with Hulscher. Under a timely motion for reconsideration, the panel would have removed this language as unnecessary. However, the case was mandated and the trial court has already acted on remand. Appeal is a more appropriate procedure than recall of the mandate under the facts here.

We have considered the motions and have determined that both motions should be denied. Now, therefore, it is hereby

ORDERED that the motion to recall the mandate is denied; it is further

ORDERED that the motion to strike the answer to the motion to recall the mandate is denied; it is further

ORDERED that Kennard's request for attorney fees is denied; it is further

ORDERED that Lee's request for attorney fees is denied.

Done this 20th day of March , 2014.

Appelwick, J.

Schindler, J.

Becker, J.

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2014 MAR 20 AM 11: 29

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
)  No. 68266-1-I
GABRIEL Y. LEE, )
)  DIVISION ONE
         Respondent, )
)  PUBLISHED OPINION
         v. )
)
CAROL ANN KENNARD, )
)
         Appellant. )  FILED: September 16, 2013
)

APPELWICK, J. — Lee and Kennard separated in 1999 and entered an agreed decree of dissolution in 2000. In 2011, Kennard sought entry of a QDRO with a present day effective date. Kennard also sued to collect spousal maintenance and child support arrears, based on Lee's failure to pay the automatic cost of living increases required by escalation clauses in the separation agreement and child support order. The trial court held that both escalation clauses were unenforceable and void. The trial court modified the effective date of the QDRO to the date of separation and sanctioned Kennard's attorney under CR 11 on that issue. We affirm as to striking the child support escalator, entering the QDRO effective as of the parties' date of separation, and imposition of CR 11 sanctions. We reverse as to the agreed maintenance escalator and remand for enforcement of that provision and for award of attorney fees on that issue.

FACTS

Carol Ann Kennard and Gabriel Lee separated on February 15, 1999. Lee's attorney withdrew from representation in January 2000. In February 2000, Kennard and Lee, now pro se, signed a separation contract and property settlement agreement, as well as an agreed child support order. Kennard's attorney, H. Michael Finesilver, drafted both the property settlement agreement and the child support order. The agreement was incorporated into a decree of dissolution. The decree and child support order were entered ex parte.

The decree awarded Kennard "[o]ne-half of the husband's Group Health retirement benefits, subject to the terms and conditions as outlined in the Qualified Domestic Relations Order [QDRO] which accompanies this agreement, except for the 401(k)." A QDRO was never attached to the final agreement.

The decree also awarded Kennard spousal maintenance of $9000 per month. The maintenance award contained an automatic escalation clause requiring the award to "be adjusted every three years based upon the cost of living index, all urban consumers for the greater Seattle and Everett area." Kennard and Lee agreed that "[m]aintenance is otherwise nonmodifiable by either party, unless agreed to in writing by the parties."

The child support order required Lee to pay $875 per month for each of their two children. Like the maintenance escalator, the child support order contained an automatic escalation clause: "The amount of child support will be increased every three

(3) years based on the cost of living index, but in no event shall the amount be in excess of $1,500 per month, per child, nor any less than $875 per month, per child."

The parties do not dispute that Lee regularly paid $9000 per month in maintenance and the child support amount originally ordered. But, Lee never paid the automatic cost of living increases for spousal maintenance or child support.

Eleven years later, in 2011, Kennard's attorney drafted a proposed QDRO and sent it to the pension plan administrator for approval. The QDRO stated that Kennard, as alternate payee:

> [I]s entitled to a portion of the amounts credited to Participant's accounts in the Plan as part of a just and right division of the estate of the parties. Such portion is hereafter defined as "Alternate Payee's Share of Plan Benefits." "Alternate Payee's Share of Plan Benefits" shall be an amount equal to a portion of the total amount held in Participant's account under the Plan, as of the date of this Order. The portion assigned for the Alternate Payee's Share of Plan Benefits shall be a percentage equivalent to fifty percent (50%) of the total vested amount held in Participant's accounts under the Plan.

(Emphasis added.) The QDRO also noted "[t]hat the amounts credited to Participant's accounts under the Plan from July 22, 1979 to February 11, 2000 are the community property of both Participant and Alternate Payee." After the plan administrator approved the proposed QDRO, it was presented to Lee who refused to sign and approve it for entry by the court. Kennard subsequently moved for adoption of the proposed QDRO, for past due spousal maintenance and child support, as well as attorney fees.

Lee requested that the trial court declare both escalation clauses void and unenforceable, because they were tied solely to the consumer price index (CPI). Lee also argued that the proposed QDRO was defective, because it entitled Kennard to half of Lee's pension, even benefits accruing after their separation and dissolution.

Essentially, Lee explained, Kennard would receive 18 years of plan contributions, instead of six years (the amount of time between initiation of the plan and their date of separation). Lee argued that this did not comport with the parties' intention. Lastly, Lee requested that the trial court sanction Kennard's attorney under CR 11 for submitting the QDRO.

The court held that the child support and maintenance escalation clauses were unenforceable and declared them void.[1] The trial court also refused to enforce Kennard's proposed QDRO as written, because it attempted to achieve a result contrary to the terms of the property settlement agreement and agreed decree. The court modified the pension plan segregation date to February 15, 1999—the date of the parties' separation. Lee and Kennard signed the modified QDRO. The court awarded CR 11 sanctions against Kennard's attorney for $1000 as to his improper QDRO submission only. Kennard appeals.

## DISCUSSION

Kennard argues that the trial court erred by holding the child support and spousal maintenance automatic escalation clauses void and unenforceable. We review questions of law de novo. Bauman v. Turpen, 139 Wn. App. 78, 87, 160 P.3d 1050 (2007). Kennard also argues that the trial court erred in refusing to enter the QDRO presented by her attorney. Lee requests that we affirm and award him attorney fees on appeal, because Kennard's appeal is frivolous and made in bad faith.

---

[1] The contract included a severability clause stating that "[i]n the event that any portion of this Agreement shall be declared invalid by any court of competent jurisdiction, those parts not at issue shall still be of full force and effect."

4

I. Child Support Escalation Clause

Kennard argues that the trial court erred by concluding that the automatic escalation clause of the child support order was unenforceable. Kennard claims the trial court based its conclusion on two erroneous findings: (1) the escalation clause did not contain a lid and (2) Kennard's counsel conceded the clause was unenforceable. However, this mischaracterizes the basis for the trial court's holding. The court found that the child support escalation clause was tied solely to the CPI and "was not based on . . . the ability of the husband to pay." Therefore, the court held the escalator void and unenforceable, because "[t]he substantive law of the state of Washington at the time the contract was entered into and the decree was entered had clearly stated for fifteen years or more that CPI-based escalator clauses are not lawful."

In 2000, when the child support order at issue was entered, it was well established that child support escalation clauses tied solely to the CPI were unenforceable. In re Marriage of Edwards, 99 Wn.2d 913, 917-18, 665 P.2d 883 (1983) (recognizing the "clear evil" of such clauses). To be valid, escalators must be related to the child's needs and the parent's ability to pay. Id. at 918. CPI escalators violate this rule, because a rise in prices may not result in a correlative increase in the parent's wages or general ability to pay. Id. at 917-18. Moreover, since 1988, chapter 26.19 RCW provided the exclusive means for calculating periodic adjustments and modifications of child support, including automatic modification clauses authorized by RCW 26.09.100(2). RCW 26.19.035(1); RCW 26.19.020. The child support statute applies even in the case of separation agreements, such as the one used here. RCW

5

26.09.070(3). Nowhere does it allow escalation clauses tied solely to the CPI as a basis for child support increases. Thus, the escalation clause here was not authorized by law.[2] Illegal escalation clauses are voidable and cannot be retroactively enforced to collect unpaid child support. In re Marriage of Stoltzfus, 69 Wn. App. 558, 561, 849 P.2d 685 (1993). We hold that the trial court did not err in holding that the child support escalation clause was unenforceable and in declaring it void.

## II. Spousal Maintenance Escalation Clause

Kennard argues that the trial court erred in holding the automatic escalation clause of the spousal maintenance agreement unenforceable as a matter of law, because it had no cap. In addition to containing no cap, the trial court found that the maintenance escalation clause was tied solely to the CPI and was not based on Kennard's needs or Lee's ability to pay. The trial court's conclusion was based on In re Marriage of Coyle, 61 Wn. App. 653, 811 P.2d 244 (1991).

In Coyle, the court held that a spousal maintenance escalation clause imposed by the trial court following trial was voidable, because it was tied solely to the CPI, was not based on the husband's ability to pay or the wife's needs, and did not contain a maximum lid. Id. at 659-60. One of the factors a court must consider in awarding

---

[2] Bauer v. Bauer recognized that a parent has a right to agree to do more for his or her children than the law requires. 5 Wn. App. 781, 788, 490 P.2 1350 (1971). Neither chapter 26.09 nor 26.19 RCW precludes a parent from agreeing to pay more child support than the statute requires. Child support is based on an income shares model that must be applied each time support is adjusted or modified. RCW 26.19.020; RCW 26.19.035. Escalator clauses may not be used in lieu of this calculation. Without calculating what the statute requires at the time of any adjustment or modification, one cannot determine if a parent is agreeing to pay more. Here, nothing in the child support order asserted that Lee was agreeing to pay more than required by the statute. Nor did it provide for the calculations necessary to verify that Lee was in fact paying more than the statute required when the automatic three year escalators were to be applied.

maintenance is the "ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations." RCW 26.09.090(f); see also In re Marriage of Foley, 84 Wn. App. 839, 845-46, 930 P.2d 929 (1997). Therefore, CPI maintenance escalators imposed by a trial court violate this statutory requirement, because a rise in consumer prices does not necessarily mean an increase in the obligor spouse's wages or general ability to pay. See Edwards, 99 Wn.2d at 917-18.

Kennard nevertheless distinguishes Coyle, arguing that nonmodifiable maintenance escalators entered into by agreement like the one here are enforceable, unlike the one that resulted from a trial in Coyle. Kennard is correct that a separation contract precluding or limiting the court's power to modify an agreed maintenance award is to be enforced according to its terms. RCW 26.09.070(7); In re Marriage of Glass, 67 Wn. App 378, 390-92, 835 P.2d 1054 (1992). We have previously recognized a distinction between what courts may do and what the parties may do by agreement with respect to the modifiability of maintenance. In re Marriage of Hulscher, 143 Wn. App. 708, 714-15, 180 P.3d 199 (2008). The court may not impose nonmodifiability, but the parties may agree to do so. Id. If "'the contract precludes the modification of maintenance absent mutual consent, then the court lacks jurisdiction to modify the contract if it was fair at the time of execution.'" Id. at 716 (quoting Glass, 67 Wn. App. at 390).

The same analysis is applicable to the CPI escalator at issue here. As in Coyle, the trial court may not impose a CPI escalator on the parties. However, no Washington case has held that the parties are not free to agree to such an escalator in their

7

settlement agreement. See id. Lee and Kennard agreed to an automatic, nonmodifiable spousal maintenance escalation clause based on the cost of living index. Unless it is found unfair at the time of execution, the court must enforce that agreement according to its terms. Below, Lee did not allege that the agreement was unfair at the time it was entered into, and the trial court made no such finding. The argument instead focused on whether the escalator was unenforceable as a matter of law. Therefore, we hold that the trial court erred as a matter of law in holding that the spousal maintenance escalation clause was void and unenforceable.

III.   Qualified Domestic Relations Order

Kennard argues that the trial court erred by refusing to enter the QDRO as presented by her attorney. She contends that the trial court had no factual basis for concluding that the parties contemplated her interest in Lee's pension being cut off on their date of separation. Therefore, she argues, the trial court improperly reformed the contract. Essentially, the parties dispute when the date of segregation of the pension benefits should be. .

We review the language of a dissolution decree de novo. In re Marriage of Thompson, 97 Wn. App. 873, 877, 988 P.2d 499 (1999). When an agreement is incorporated in a dissolution decree, the court must ascertain the parties' intent at the time of the agreement. In re Marriage of Boisen, 87 Wn. App. 912, 920, 943 P.2d 682 (1997). If a decree is ambiguous, general rules of statutory and contract construction apply. Thompson, 97 Wn. App. at 878.

The agreement here specified that any court interpreting the document should apply the substantive law of Washington. Under Washington law, a trial court has broad discretion in distributing martial property, both community and separate. In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). Pension benefits are deferred income. In re Marriage of Landry, 103 Wn.2d 807, 810, 699 P.2d 214 (1985). As such, pension benefits that accrue during a term of employment are characterized in the same way as the income earned during that term of employment. Id. When spouses are living separate and apart, their respective earnings "shall be the separate property of each." RCW 26.16.140.

Case law does not support simply dividing the total pension in half. In re Chavez, 80 Wn. App. 432, 436, 909 P.2d 314 (1996). Pension increases attributable to higher wages during continued employment postdissolution are community interests. In re Marriage of Bulicek, 59 Wn. App. 630, 638, 800 P.2d 394 (1990). A spouse is entitled to share in postdissolution annual adjustments or cost of living increases to pension benefits, but not increases due solely to additional years of service. Chavez, 80 Wn. App. at 438. Applying Washington law to the plain language of the decree, Kennard's 50 percent interest in the pension did not include any increases attributable to Lee's years of continued employment postdissolution. The trial court's modified QDRO applying the separation date as the applicable end point was consistent with that law.

Because this decree was based on an agreement authorized by RCW 26.09.070, the question remains whether the parties intended to do something more than the trial court could have ordered in a contested case. The agreement indicated the parties'

intent to segregate their property on their separation date (stipulated as February 15, 1999):

> 2.1 Except as otherwise authorized by this Agreement, each spouse hereby covenants to make no claim upon the property or earnings assigned herein to the other party by way of marital community interest therein, and hereby releases any and all rights or interest in any real or personal property after the date of separation of the parties or the date of this Agreement, which ever date occurs first. Both parties agree that neither will assert any claim or demand of any kind against the other except as expressly recognized herein.

The trial court approved the QDRO for one-half of the pension as of the date of separation. This is consistent with paragraph 2.1 of the agreement, unless the pension was subject to the "[e]xcept as otherwise authorized by this Agreement" clause. Kennard points to no language in the agreement that supports a conclusion that the pension was an exception.

Under federal law, the original QDRO should have specified "the number of payments or period to which such order applies." 29 U.S.C. § 1056(d)(3)(C)(iii) (2013). It was not attached to the agreement or decree Kennard submitted to the court. If a written contract is not a complete expression of the parties' agreed-upon terms, the terms not included may be proved by extrinsic evidence if they do not contradict the written terms. Berg v. Hudesman, 115 Wn.2d 657, 670, 801 P.2d 222 (1990). But, Kennard offered no extrinsic evidence to support her argument. She relied exclusively on her own declaration as to her intent and understanding. However, subjective intent of one party to an agreement does not establish the intent of the parties. Ross v. Bennett, 148 Wn. App. 40, 46, 203 P.3d 383 (2008). Kennard has not established that the pension benefits were intended to be treated as an exception to paragraph 2.1 of the agreement or that they were intended to be divided based on her stated intent.

We hold that the trial court did not err in refusing to adopt the proposed QDRO's 11 year postdissolution effective date, instead segregating the pension plan on the parties' separation date.

## IV. CR 11 Sanctions

Kennard argues that the trial court erred in awarding CR 11 sanctions against her attorney, because it did not enter findings that he acted in bad faith or that his argument was frivolous. This court reviews a trial court's imposition of CR 11 sanctions for abuse of discretion. Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994). CR 11 authorizes a trial court to impose appropriate sanctions if a party's filing is not well grounded in fact, or not warranted by existing law or a good faith argument to alter existing law.[3] Conom v. Snohomish County, 155 Wn.2d 154, 163-64, 118 P.3d 344 (2005). Here, the trial court made these exact findings on the record at oral argument then incorporated those findings by reference into its memorandum of decision. The court concluded that the proposed QDRO's effective date was clearly contrary to the original decree and was therefore neither well grounded in fact nor warranted by existing law. The trial court did not abuse its discretion in awarding CR 11 sanctions against Finesilver.

---

[3] Contrary to Kennard's implication, In re Recall of Pearsall-Stipek does not require a trial court to always find bad faith in order to award CR 11 sanctions. 136 Wn.2d 255, 266-67, 961 P.2d 343 (1998). Pearsall-Stipek applies in the narrow context of recall petitions. Id.; see also In re Recall of Lindquist, 172 Wn.2d 120, 141, 258 P.3d 9 (2011). A court may not award expenses and attorney fees against a petitioner who brings a merely frivolous recall petition—the court must find bad faith. Id. In nonrecall cases, a frivolous filing and a bad faith filing are considered alternative violations, and either can result in sanctions. Harrington v. Pailthorp, 67 Wn. App. 901, 912-13, 841 P.2d 1258 (1992).

11

## V. Trial Court's Failure to Award Attorney Fees

Kennard argues that the trial court erred in failing to award attorney fees for having to move to enforce the child support and maintenance escalators. Kennard requests attorney fees and costs "pursuant to RAP 14(1) and (3), RCW 26.09.040, and RCW 26.18.160."[4] RCW 26.18.160 mandates an award of reasonable attorney fees to the prevailing party in an action to enforce child support or spousal maintenance. Kennard was not the prevailing party below and is not the prevailing party here as to child support, so she is not entitled to fees below or on appeal based on that claim. However, she has prevailed on her claim to enforce maintenance and is entitled to an award of reasonable attorney fees on appeal, solely attributable to that issue. Assuming on remand that the settlement agreement is not found to have been unfair at the time it was made, the trial court should award Kennard her reasonable attorney fees incurred solely with respect to the maintenance issue in the initial proceeding, on appeal, and on remand.

## VI. Sanctions on Appeal

Lee requests that we award him attorney fees as a sanction under RAP 18.9(a), because the appeal is frivolous.

> "In determining whether an appeal is frivolous and was, therefore, brought for the purpose of delay, justifying the imposition of terms and compensatory damages, we are guided by the following considerations: (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the

---

[4] Presumably Kennard means RCW 26.09.140, instead of RCW 26.09.040, which does not mention attorney fees and costs. The language of RCW 26.09.140 clearly makes an award of fees and costs discretionary. Kennard provides no argument as to why the trial court abused its discretion in failing to award fees under RCW 26.09.140, so we need not consider it. RAP 10.3(6).

appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal."

Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 241, 119 P.3d 325 (2005) (internal quotation marks omitted) (quoting Green River Comty. Coll. Dist. No. 10 v. Higher Educ. Pers. Bd., 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986)). Here, the maintenance issue was a debatable issue. We cannot conclude from the record that the appeal was brought solely for the purpose of delay.

Lee argues that even if we do not find all Kennard's assignments of error frivolous, we can impose partial sanctions under In re Marriage of Farr, 87 Wn. App. 177, 940 P.2d 679 (1997). In Farr, we stated:

> We partially grant Farr's request for fees and costs under RAP 18.9(a). Although Martin has prevailed on his challenge to the imposition of jail sanctions, his arguments relating to the right of autonomy, modification, the state privacy act, and recusal are frivolous. We award Farr her fees and costs for those portions of the appeal upon which she has prevailed, subject to her compliance with RAP 18.1.

Id. at 188-89. Sanctions are authorized when a person (1) uses the rules for the purpose of delay, (2) files a frivolous appeal, or (3) fails to comply with the rules to pay terms or compensatory damages. RAP 18.9(a). RAP 18.9(a) does not speak in terms of filing one or more frivolous issues or assignments of error—only a frivolous appeal as a whole. The standard stated in Tiffany Family Trust Corp. has been consistently applied both before and after the Farr decision. See, e.g., Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd., 170 Wn.2d 577, 580, 245 P.3d 764

(2010). The sanctions awarded in <u>Farr</u> cannot be squared with the rule or the case law interpreting the rule.[5] We decline to follow its example.

Alternatively, Lee requests that we award him attorney fees under CR 11, arguing that the appeal was brought in bad faith. We cannot find that Kennard has used the rules for the purpose of delay, filed a frivolous appeal, or failed to comply with the rules, as required for an award of attorney fees as a sanction under RAP 18.9.

We affirm the trial court decision as to the child support order, the QDRO, and the award of CR 11 sanctions. We remand the issue of the maintenance escalator to the trial court. Unless the separation agreement is set aside, Kennard is entitled to an award of reasonable attorney fees incurred related solely to the maintenance issue, in the prior proceeding below, on appeal, and on remand.

_____Appelwick, J._____

WE CONCUR:

_____Spearman, J._____        _____Becker, J._____

---

[5] <u>Farr</u> was a family law case. 86 Wn. App. 177. The fee award could have been ordered under chapter 26.09 RCW.