IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 34564-5-III |
| | ) | |
| ROGER L. ALDRICH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| MARY BETH ALDRICH, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Roger Aldrich appeals the denial of a petition to modify a decree of

spousal maintenance. Because Mr. Aldrich has submitted sufficient evidence of a change

in circumstances, we reverse the superior court's order and remand for reconsideration.

## FACTS

Roger and Mary Beth Aldrich were married in April 1981 and separated in March 2008. A decree of dissolution was entered in June 2010.

The 2010 dissolution decree awarded Ms. Aldrich $2,500 per month as lifetime spousal maintenance, an amount that constituted one-half of Mr. Aldrich's then gross salary. The court noted Mr. Aldrich was underemployed. To account for this circumstance, the court found that should Mr. Aldrich's income increase, he would be required to pay 35 percent of his additional gross earnings in maintenance,[1] less deductions for social security. The court's 2010 decree did not account for the possibility of a decrease in income. Neither party appealed the 2010 order.

In February 2015, Mr. Aldrich's employer, the Center for Personal Protection and Safety (CPPS), notified him his annual salary would be decreased from $140,000 to $105,000. In May 2015, CPPS informed Mr. Aldrich his position had been eliminated and offered Mr. Aldrich a new position with an annual salary of $70,000. Mr. Aldrich accepted the new position, but CPPS also eliminated that position on August 1, 2015. At the time CPPS eliminated his position, CPPS owed Mr. Aldrich approximately $90,000 in

---

[1] The 2010 decree excluded various benefits which were separately apportioned to Ms. Aldrich.

back pay. Throughout this time, Mr. Aldrich continued to make the required payments to Ms. Aldrich.

On September 1, 2015, Mr. Aldrich filed a petition for support modification. In an accompanying declaration he alleged: "I am no longer able to earn the income I once earned nor am I able to comply with the maintenance provisions of the decree, as a substantial change in circumstances has occurred since issuance of the decree." Clerk's Papers (CP) at 41. Mr. Aldrich reached 68 years of age in December 2015. Throughout several declarations filed in support of his petition, Mr. Aldrich stated: (1) he had sought vocational assistance and discovered he was only capable of working as a security guard for $10 per hour, (2) he had attended seminars and applied for jobs through WorkSource Washington as well as at area schools and state agencies, (3) he had applied for unemployment compensation, (4) the only employer who had need of his skills was the United States Department of Defense, for whom he could not work unless he forfeited the military and federal civil service retirement benefits he shares with Ms. Aldrich, and (5) because of a lack of response to his job applications, he worked as an independent contractor for CPPS in an attempt to preserve his remaining unemployment benefits and to reduce the amount of money he had been withdrawing from savings to meet his maintenance obligation. According to Mr. Aldrich's independent contractor agreement,

CPPS would pay him $1,000 per day per event on an "as Needed Basis" from January 2016 through June 2016. CP at 168. Since CPPS eliminated his position, Mr. Aldrich averred he earned $20,500 in gross income but had only been paid $15,000.

In her own declaration filed on March 23, 2016, Ms. Aldrich alleged that Mr. Aldrich began making substantially more money after the decree was entered. She questioned Mr. Aldrich's motives for filing the petition, arguing he used the month after he lost his job at CPPS to build a case to modify maintenance instead of obtaining additional employment. She also claimed CPPS had Mr. Aldrich listed as a senior advisor on its website since August 2015.

The financial information before the superior court commissioner at the time the petition for modification was heard included Mr. Aldrich's monthly after tax, after spousal maintenance payment income of $4,840.97, from which he was subtracting $3,977.55 for his monthly living expenses. The sources of Mr. Aldrich's income included his share of the monthly United States Air Force retirement pay and federal civil service annuity, social security benefits, and unemployment compensation. Ms. Aldrich's financial statement showed a total monthly net income of $6,618.34, from which she deducted her total monthly expenses of $6,512.11. Her sources of income included spousal maintenance, her share of Mr. Aldrich's Air Force retirement pay and federal

4

civil service annuity, and her own social security benefits.

The commissioner denied the petition for modification. Basing her findings principally on the 2010 findings accompanying the decree of dissolution, the commissioner found no substantial change in circumstances. Provided the need and ability to pay standard was met, the commissioner awarded attorney fees and costs to Ms. Aldrich. Mr. Aldrich appeals.

## ANALYSIS

*Modification of lifetime spousal maintenance*

At the time of the parties' 2010 dissolution, the court awarded Ms. Aldrich lifetime maintenance. This type of award is disfavored in Washington. *In re Marriage of Coyle*, 61 Wn. App. 653, 657, 811 P.2d 244 (1991). In order to provide relief from unintended hardships caused by lifetime maintenance, our laws allow for modification. *See id.* The fact that a party chose not to appeal an initial maintenance award has no bearing on the ability to seek modification.

The statute permitting modification of a maintenance award is RCW 26.09.170(1). This provision allows a court to "modify a maintenance award when the moving party shows a substantial change in circumstances that the parties did not contemplate at the time of the dissolution decree." *In re Marriage of Spreen*, 107 Wn. App. 341, 346,

28 P.3d 769 (2001). "The phrase 'change in circumstances' refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse." *Id.* (internal quotation marks omitted) (quoting *In re Marriage of Ochsner*, 47 Wn. App. 520, 524, 736 P.2d 292 (1987)).

We review a court's modification decision for abuse of discretion. *In re Marriage of Drlik*, 121 Wn. App. 269, 274, 87 P.3d 1192 (2004). We will affirm the superior court's decision so long as it rests on tenable grounds that are not manifestly unreasonable. *Oschner*, 47 Wn. App. at 525. A decision is untenable if it is unsupported by the record. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

The uncontroverted evidence before the superior court indicates Mr. Aldrich's income has decreased significantly since the 2010 maintenance award. Mr. Aldrich verified his change in circumstances and submitted financial information documenting his current income and expenses. On its face, the information submitted by Mr. Aldrich would appear sufficient to establish a change in circumstances. However, the superior court commissioner appears to have rejected Mr. Aldrich's claims on the basis that his reduction of income was not suffered in good faith. *See, e.g., Lambert v. Lambert*, 66 Wn.2d 503, 510, 403 P.2d 664 (1965).

We find no basis in the record for rejecting the veracity of Mr. Aldrich's claim of changed circumstances. No evidence suggests Mr. Aldrich chose to quit his job or engage in an underpaid professional venture. The evidence is that Mr. Aldrich's circumstances were forced on him by his employer and, since that time, Mr. Aldrich has attempted to maximize his economic prospects by seeking vocational assistance and obtaining contract work. Mr. Aldrich's efforts to continue in the workforce and remain current on his maintenance obligations are a strong indicator of good faith, especially given that he has reached the age where he can and should be permitted to consider retirement.

Ms. Aldrich nevertheless contends that Mr. Aldrich's reduction in income is due to bad faith. She claims the witnesses Mr. Aldrich has relied on to support his modification petition were found not credible back in 2010 at the time of the original maintenance award. She also points out that Mr. Aldrich's name has appeared on the CPPS website, despite his claim that he was laid off. Neither contention is persuasive. Nothing in the record before this court suggests Mr. Aldrich's witnesses were previously found not credible.[2] Nor is there any information undercutting their current credibility. The

---

[2] In support of her allegation, Ms. Aldrich cites only to her own declaration. Ms. Aldrich's statement does not constitute evidence of the 2010 court findings.

7

existence of Mr. Aldrich's name on the company's website says nothing about Mr. Aldrich's present financial circumstances. The insinuation is that Mr. Aldrich and his former employer have engaged in some sort of fraud to hide his employment and income so he will not have to pay maintenance.[3] The court will not jump to this type of conclusion without significant nonspeculative evidence.

Because Mr. Aldrich has submitted sufficient evidence of an unforeseen change in economic circumstances, we remand this matter to the superior court for modification proceedings. On remand, the superior court shall consider Mr. Aldrich's financial resources in terms of his actual income, unless substantial evidence supports a finding that he is voluntarily underemployed. In assessing this issue, the court may consider the credibility of the parties' witnesses and other evidence. However, the fact that Mr. Aldrich was deemed underemployed in 2010 does not control whether he is in similar circumstances today.

---

[3] The commissioner noted it was "highly suspicious" that Mr. Aldrich was laid off instead of fired because, by being laid off, he retained the ability to collect unemployment benefits. CP at 218, 242. We do not share this view. There is no indication Mr. Aldrich was fired for cause. The uncontroverted evidence before the court was that he was laid off due to economic cutbacks by his employer. This circumstance would appear to be fairly ordinary, not suspicious.

No. 34564-5-III
*In Re Marriage of Aldrich*

*Attorney fees and costs*

Mr. Aldrich next argues the commissioner erred in allowing Ms. Aldrich to note a hearing to determine her award of attorney fees and costs following a need and ability to pay analysis. RCW 26.09.140 is the applicable statute. In light of the conclusion reached here, the commissioner will need to revisit this determination on remand.

## CONCLUSION

We remand this case to the superior court for reconsideration of Mr. Aldrich's petition. Each party shall bear its own appellate fees and costs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____                    _____
Fearing, C.J.                              Lawrence-Berrey, J.

9