IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>LAURA A. SEYMOUR (fka Green),<br><br>                Appellant,<br><br>and<br><br>GERALD L. GREEN,<br><br>                Respondent. | No. 83431-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Laura Ann Seymour challenges a post-dissolution order disbursing proceeds from the sale of the family home she shared with her former spouse, Gerald Lyn Green. She contends that the trial court's disbursal of the proceeds was disproportionate and inequitable, its termination of the parties' spousal support agreement was error, and its failure to satisfy a student loan debt with the proceeds was improper. We reverse the ruling to terminate the payments ordered pursuant to the parties' property division agreement, but otherwise affirm.

## FACTS[1]

The parties' marriage was dissolved in August 2017. The final dissolution decree, entered in Pacific County Superior Court, authorized Green to keep the family residence "subject to a judgment lien in favor of [Seymour] for one half of the equity in the home" as of the date of entry of the decree, subject to an interest rate of seven percent. The decree ordered Green to continue paying the mortgage, household expenses, half of a federal student loan, a WSECU[2] line of credit, a Home Depot line of credit, and the financing for a Toyota Tundra vehicle.

Green, as part of the dissolution, asked to pay Seymour spousal support (maintenance) of $300 every month until August 21, 2022 "in lieu of splitting the PERS[3] Retirement Account." The trial court granted his request, ordered him to begin making such payments in September 2017, and noted that "[s]pousal support will end when either spouse dies, or the spouse receiving support gets married . . . <u>unless</u> a different date or event is provided below: Dated: August 21, 2022."[4]

As of September 2017, the equity in the family residence was $80,959 and Seymour claimed that her share of that amount with interest was $43,313. Green failed to pay Seymour the equity she was owed and several of the other

---

[1] Only 16 of 54 pleadings were designated as part of the record on appeal. Though our review is hindered by a limited record, we discern the essential facts from the pleadings provided.
[2] Washington State Employees Credit Union (WSECU)
[3] Public Employees Retirement System (PERS)
[4] Emphasis in original.

debts allocated to him. Nevertheless, Seymour initially obtained spousal support by directly withdrawing funds from a joint bank account.

In December 2018, Seymour filed a pro se motion for contempt against Green for failure to pay his financial obligations set forth in the dissolution decree. Following a hearing, the trial court found that the divorce order "did not provide a deadline date for [Green] to pay one half of the equity in the home," so it entered an order giving Green 60 days to provide proof that he had either (1) paid "half of the equity of the home" to Seymour, (2) "applied to refinance the mortgage on the residence in an amount sufficient to pay" Seymour, or (3) listed the home for a sufficient amount to pay Seymour.

In March 2019, the parties appeared pro se at a review hearing on the contempt motion. There, Green apparently indicated that he had a plan to sell the family residence and pay what he owed to Seymour. That same month, Green paid Seymour $20,000 of her equity interest in the home and purportedly "promised to have the rest to [her] in two weeks." He then lost contact with Seymour and stopped paying spousal support and the other obligations ordered in the decree.

Seymour filed another motion for contempt against Green in May 2019. At the subsequent hearing in June 2019, Green said he was having difficulty paying his debts due to being laid off from work and asked the court to allow him until August 2019 to list the home for sale. Though the trial court did not hold Green in contempt, expressing that the layoff prevented it "from finding a willful violation of a court order," it ordered him to list the home for sale within two weeks and

provide documentation as to his financial situation. The trial court also instructed that, once the home was sold, the proceeds would be put into an escrow account for it to then "divide based on the previous court order and any of these outstanding bills for back payments of support and bills that have not been paid." Seymour also remarried that same month.

Despite the court's instructions, Green neither listed the family residence for sale nor paid his obligations, so Seymour moved for a review of the contempt proceedings. She requested the authority to immediately list the family residence for sale, $13,909.56 in costs advanced for unpaid mortgage payments and other bills, $819.76 for costs to close a joint checking account that Green had overdrawn, recovery of five days lost wages she claimed was due to Green's refusal to follow the court's orders, and costs to serve the pleadings on Green. At an August 2019 review hearing, which Green did not attend, the trial court found Green in contempt, granted Seymour the authority to sell the family residence, and appointed a real estate commissioner to execute the quit claim deed that Seymour would eventually present.

The home sold at some point thereafter, resulting in approximately $135,122 in proceeds from the sale and for the trial court to disburse.[5] In January 2020, Seymour filed a pro se motion for disbursement of the proceeds. Specifically, she requested $48,686.08 for her remaining share of equity in the

---

[5] Though the record does not indicate the exact amount of the proceeds received, we presume the entirety of that amount was deposited into the Pacific County Superior Court's Registry as this appeal concerns the trial court's disbursement of those funds.

home, past and future spousal support, wage loss, and other costs advanced; $62,000 for Green's share of the student loan balance; $7,062.90 for the WSECU line of credit; and $15,883.50 to pay Green's balance owed to Toyota Motor Credit Corporation.

At a February 2020 hearing, Seymour appeared with counsel and sought entry of a proposed order disbursing funds. Green, still pro se, requested a continuance to get "legal advice." The trial court granted a continuance but authorized an initial $5,000 disbursal of the proceeds to Seymour.

The parties next met in May 2020, at a hearing on the "presentation of an order on disbursement for the sale of proceeds of the [family] home." Green, appearing through counsel, challenged Seymour's requests on various factual, procedural, and legal grounds.[6] The trial court continued the hearing on all "issues as to disbursement" to a later date and directed the court clerk to disburse an additional $10,000 from the proceeds to Seymour.

Seymour then filed two additional motions, including an amended motion for contempt against Green in June 2020, and a motion for post-decree change pursuant to CR 60 in September 2020. However, she did not personally serve Green with either motion.

On October 6, 2020, a disbursement hearing was held. At the outset, the trial court noted that the parties were there to address the accounting of Seymour's reimbursements and disbursal of the proceeds only, not a contempt

---

[6] At this point, it appears that pleadings were filed by the parties' counsel and not filed pro se. However, we note that the record does not contain any pleadings filed by Green pro se or by Green's counsel.

motion that had been decided "months ago", nor a motion that was not properly served. After hearing argument, the trial court awarded Seymour: $23,000 in remaining equity from selling the family residence; $819.76 in overdraft bank fees; $11,000 for the WSECU loan; $9,604.42 for a PennyMac home loan; $331 for utility fees; $4,505 in interest; and $5,000 in attorney fees. It did not award her any lost wages or past due spousal support, reasoning that:

> The past due maintenance, the Court is not convinced that this was a situation contemplated by the parties in their agreement in the writing a date certain as an outside date to expire from the Court's reading of the decree. It was not a date that would trump death of either the parties or marriage, so I'm disallowing any maintenance owed.

The trial court also awarded Seymour "credits [for] the $300, the $756, the $500, the $1,131, the $648" and ruled that "the Court advances [of] the $5,000 and $10,000 will be allowed as credits."[7]

At the presentation hearing, on October 16, 2020, Seymour attempted to raise issues she felt the court got wrong (spousal maintenance) or did not address at all (the student loans and Toyota vehicle loan). But the trial court repeatedly rejected Seymour's efforts, noting and instructing: "If you believe I missed something, bring a further motion," "Any unresolved issues can be brought back," "If there are other issues from the divorce that have not been dealt with satisfactorily, then bring the motion," and "And did the Court just not tell you that you could bring motions regarding the vehicle. . . and the student loans."

---

[7] Any documentation explaining the sources of these credits or the proposed orders showing the application of these credits are not in the record.

In its order disbursing $115,568.58 remaining in the court's registry, the trial court awarded $36,727.49 to Seymour and $78,841.09 to Green.  Of note, the trial court's order also clarified that:

> 6.  This Order relates to all obligations under the terms of the <u>Decree</u> through the filing of the contempt order herein and the costs and expenses incurred by the petitioner through date of this Order.
>
> 7.  All other orders and obligations in the <u>Decree</u> that remain unfinished and/or unpaid remain in full and effect, if not satisfied, may be the subject of future actions between the parties, as noted in the <u>Decree</u>.[8]

Seymour appeals.

<u>Modification of the Decree</u>

Seymour contends that the trial court improperly modified the dissolution decree when it awarded Green a disproportionate amount of equity from the family home proceeds.

We review a trial court's decision to disburse funds held in the court registry for an abuse of discretion.  <u>Pac. NW. Life Ins. Co. v. Turnbull</u>, 51 Wn. App. 692, 699, 754 P.2d 1262 (1988) (citing <u>Wilson v. Henkle</u>, 45 Wn. App. 162, 169, 724 P.2d 1069 (1986)).  We also review its equitable determinations for abuse of discretion.  <u>In re Marriage of Farmer</u>, 172 Wn.2d 616, 624, 259 P.3d 256 (2011).  A trial court abuses its discretion when its "decision is manifestly unreasonable or based on untenable grounds or untenable reasons."  <u>In re Marriage of Katare</u>, 175 Wn.2d 23, 35, 283 P.3d 546 (2012) (citing <u>In re Marriage of Littlefield</u>, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).  "An error of law

---

[8] Emphasis in original.

7

constitutes an untenable reason." Farmer, 172 Wn.2d at 625 (citing Noble v. Safe Harbor Family Pres. Trust, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009)).

In her briefing, Seymor says that "[o]nce the family home sold, there was a concrete, actual figure for the equity at $125,498.33." In order to enforce the decree without modification, Seymour asserts, this court should conclude that her "share in the equity is $62,749.16, one-half of the equity remaining after the sale of the home." The fatal flaw in Seymour's assertion is that she was awarded "one half of the equity in the home as of the date of the entry of the Decree of Dissolution," not as of a date years later. And, as the record establishes, Seymour received the remainder of the equity she was owed pursuant to the decree in the disbursement order.

In sum, the trial court adhered to the terms of the decree and did not modify them. There was no abuse of discretion.

Property Division Agreement

Seymour asserts that the trial court's termination of the parties' spousal support agreement was error, because it was payment for her interest in Green's retirement account, and constituted an improper modification of the dissolution decree. We agree.

"Whether provisions in a decree are for maintenance or a method of property division depends upon the circumstances and the intent of the parties." In re Marriage of Coyle, 61 Wn. App. 653, 660, 811 P.2d 244 (1991) (citing Thompson v. Thompson, 82 Wn.2d 352, 356, 510 P.2d 827 (1973)). "Maintenance provisions can be modified on subsequent application of a party to

a dissolution; property division provisions cannot." <u>Coyle</u>, 61 Wn. App. at 660.

As the <u>Coyle</u> court further explained,

> Maintenance depends on the needs of one spouse and the ability of the other spouse to pay; generally terminates on the death of either spouse, or the remarriage of the receiving spouse; and is an obligation which is paid out of the earnings or estate of the party responsible for the obligation. Changed financial circumstances of either party will justify a modification.
>
> A property division, on the other hand, simply disposes of the property of the parties, both community and separate, presumably upon an equitable basis. The award of property usually constitutes a specific item or sum and is not affected by the death or remarriage of a party. A property division cannot always be conveniently effected by a present allocation of property to each party; a specific item of property may be awarded to one spouse with a duty of the other to make future compensating payments.

<u>Coyle</u>, 61 Wn. App. at 660-61 (citations omitted).

Generally, the provisions in a dissolution decree as to property disposition "may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." RCW 26.09.170(1). A decree is modified when the rights given to one party are extended or reduced beyond the scope originally intended. <u>In re Marriage of Thompson</u>, 97 Wn. App. 873, 878, 988 P.2d 499 (1999).

Here, during the dissolution proceedings, Green asked the trial court to allow him to pay Seymour spousal support in the amount of $300 per month until August 21, 2022, "in lieu of splitting the PERS Retirement Account." The trial court granted Green's request and included a provision in the decree requiring him to pay Seymour spousal support until "either spouse dies, or the spouse receiving support gets married" unless a different date or event was provided.

The parties chose, and the trial court accepted, August 21, 2022, as the date upon which Green's spousal support payments terminated.

The spousal support obligation was in exchange for a specific item, which was a share Green's PERS Retirement Account. The obligation was not contingent on Seymour's need or Green's ability to pay. It terminates in August 2022, not upon the death of the parties or Seymour's remarriage. For these reasons, we conclude that the "spousal support" provision was misnamed and constitutes payments in lieu of a portion of the PERS Retirement Account as part of the parties' property division. Consequently, Seymour was and is entitled to payments of $300 per month from September 2017 to August 2022.

It was error for the trial court to modify the decree by terminating this misnamed, but clearly intended, property division. Therefore, we remand for the trial court to calculate the proper amount of payments owed to Seymour under this provision.

Student Loans

Finally, Seymour avers that the trial court erred by refusing to include the student loan debt when disbursing the sale proceeds and by not following its prior contempt order instructing that the student loan would be satisfied in the disbursement. Our standard of review remains abuse of discretion. Pac. NW. Life, 51 Wn. App. at 699.

During the disbursement proceedings, as based on the record provided, Seymour never presented the trial court with the amount she claimed Green owed in past-due student loan payments. Instead, she asked for an award

matching the entire $62,000 balance of Green's share of that loan. At the disbursement hearing, the trial court announced, as to "ongoing debts" including student loan payments, it was "not going to take and prepay any of the loans or balances out of the proceeds." It further said, "[t]he parties are left to the normal course and recourse for failure to pay those debts, whether that's for a suit of indemnification or anther form, I leave that to counsel to purse." When Seymour attempted to revisit the student loan issue at the subsequent presentation hearing, the trial court invited her to file additional motions to address the vehicle and student loan payments.[9]

Where the record established that Seymour failed to request a past-due amount of student loan payments, we conclude that the trial court did not err by allowing her to bring future actions to address unresolved issues. The trial court did not abuse its discretion

<u>Fees on Appeal</u>

Both parties request attorney fees and costs on appeal. RAP 18.1 allows this court to award fees and costs if authorized by applicable law. Seymour relies on RCW 26.18.160, which allows a prevailing party in an action to enforce a support or maintenance order to recover costs and reasonable attorney fees. But, as Seymour argues and as we have concluded, the spousal support provision that she is attempting to enforce in this matter is really a division of

---

[9] In this portion of her briefing, Seymour focuses on the student loan issue only and does not address the Toyota vehicle loan.

Green's PERS retirement account. Therefore, we deny her request for an award of attorney fees.

Green's requests for attorney fees relies on RAP 18.9 (sanctions for frivolous appeal) and CR 11. An appeal is frivolous "if the appellate court is convinced that the appeal presents no debatable issues upon which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." In re Marriage of Foley, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). We do not view Seymour's appeal as frivolous or lacking all arguable merit. Green's request for an award of attorney fees on appeal is denied.

Conclusion

We affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion. The parties' request for attorney fees on appeal are denied.

_____

WE CONCUR:

Andrus, A.C.J.          Appelwick, J.

12